## LA BEE v. SMITH.

No. 4063.    Decided September 18, 1924.    (229 Pac. 88.)

1. WATERS AND WATER COURSES—EASEMENT BY PRESCRIPTION TO USE DITCH SHOWN. In action to enjoin defendant from conveying water through a ditch across plaintiff's land, evidence *held* to sustain finding that defendant had an easement by prescription to use ditch.

2. WATERS AND WATER COURSES—VISIBILITY OF EASEMENT TO PURCHASER SHOWN. In action to enjoin defendant from conveying water through a ditch across plaintiff's land, evidence *held* to sustain finding that ditch was visible when plaintiff purchased property.

3. WATERS AND WATER COURSES—EASEMENT TO CONVEY WATER THROUGH DITCH HELD TO PASS WITH LAND. Where a visible

ditch across land which plaintiff purchased had been used by defendant and his predecessors for 20 years for conveying water, such easement passed with title to land.

4. JUDGMENT—CONFORMS TO PLEADINGS IF ISSUES WARRANT FORM OF JUDGMENT RENDERED. A judgment conforms to the pleadings, if the pleadings as a whole necessarily raise the issue, and a judgment that defendant was entitled to use a ditch was warranted, though there was no counterclaim therefor.[1]

Appeal from District Court, Third District, Salt Lake County; *L. B. Wight,* Judge.

Suit for injunction by Joseph J. La Bee against W. J. Smith. From a judgment for defendant, plaintiff appeals.

AFFIRMED.

*F. B. Scott,* of Salt Lake City, for appellant.

*Morgan & Huffaker,* of Salt Lake City, for respondent.

RITCHIE, District Judge.

The plaintiff, who is the appellant, appeared in this action against the defendant and respondent to enjoin him from conveying water through a certain ditch running across the plaintiff's land, and to recover damages caused by the overflow of water running through the ditch. For convenience, their names will be used in discussing the facts instead of designating them as appellant and respondent respectively. They owned adjoining farms near the mouth of Big Cottonwood Canyon; La Bee's lying east of Smith's. There are two main canals or ditches running across La Bee's land to convey water for irrigation to Smith's, known as the Upper Ellison and the Lower Ellison. The ditch in controversy is a small lateral from the Lower Ellison ditch, and is called

---

[1] *Rosenthyne* v. *Matthews*, 51 Utah, 38, 49, 168 Pac. 957, 961.

See 33 C. J. p. 1150; 40 Cyc. pp. 734, 744 (1926 Anno), 764 (1926 Anno).

by the witnesses the Y ditch, or little ditch. It heads on La Bee's property at a point about 200 feet south of his house. Passing on through his land it leads into Smith's farm, and is used by both parties for irrigation purposes. The action was brought to prevent Smith from carrying water through this small ditch. It was alleged in the complaint that Smith unlawfully opened this ditch and ran water through it, and that he threatens to continue to do so, and upon this showing a temporary restraining order was issued.

In his amended answer Smith alleged the existence and use of the two ditches and the lateral ditch, and then further alleges that "said ditches have been for more than 25 years last past used continuously by defendant and his predecessors in interest adverse to the world and under a claim of right" to convey water for irrigation, and that the farm of the defendant cannot be irrigated except through the waters conveyed through said ditches; denies any damages resulting from any acts of his; and prays that the plaintiff take nothing, and that he be dismissed with costs.

The case was tried to the court, and the court made findings of fact to the effect that the parties owned their respective farms, as before stated, and that at one time they were both owned as one parcel of land by C. S. Kinney; that about 40 years ago, while Kinney was the owner of the whole tract of land, he constructed over the farm now owned by La Bee the Y ditch in question, and ever since that time it has been used as a lateral of the Lower Ellison ditch. It was further found that "the Y ditch is very conspicuous, and can be readily seen by any one going upon the plaintiff's farm; that Kinney sold his property in parcels to divers persons, and in each conveyance conveyed all water rights belonging to the land described in each conveyance respectively, and that in no case did Kinney reserve to the land of the plaintiff the said Y ditch or the right to run water through the same. Further, that plaintiff has suffered no damage through acts or omissions of the defendant."

Conclusions of law were found and a decree in substance

that the defendant was entitled to the decree granting him a right and easement to convey water through said Y ditch for the purpose of irrigation, and the decree was entered accordingly.

There are three main issues of fact: (1) Did Smith have an easement by prescription over La Bee's land to use the Y ditch? (2) Was the Y ditch visible when the plaintiff, La Bee, bought his land? (3) Was the plaintiff damaged by any unlawful act of the defendant?

Counsel for the appellant La Bee, in his brief, discusses questions of law stated in various ways, but which are reducible to three: (1) He contends that, as both pieces of property now owned by the parties respectively were once owned by the same man, C. S. Kinney, Kinney could not acquire a prescriptive right for an easement for a ditch over one piece of his own land in favor of another, and therefore he could not convey, when he deeded away the Smith land, an easement over the La Bee land in favor of Smith's predecessor because, as he contends, there is no finding on the allegation in the defendant's amended answer, in substance that for more than 25 years said ditches (including the Y ditch) have been used continuously and adversely under claim of right; but instead thereof he contends the defendant's claim was shifted from that of a prescriptive title, as so pleaded, to a claim of grant from Kinney of the land, "together with all water rights thereto belonging." (2) That the court erred in entering a judgment granting a right and easement to the defendant, for the reason that no counterclaim was set up, and there was no prayer for judgment to that effect. (3) That the court erred in overruling the plaintiff's motion for a new trial, on the ground of newly dscovered evidence material to the plaintiff, not discoverable with reasonable diligence.

To determine the controversies of fact will greatly simplify some of the other questions.

First. Is the claim of the defendant, Smith, to the right of an easement by prescription to use the Y ditch, as found by the court, supported by sufficient evidence?

John Schelkin testified that he moved on the La Bee property in the fall of 1900, and that he and another man named Okden dug this ditch, and he describes its course. "It was in 1899 that I worked for Judge Kinney. He owned all the property at that time. Under his direction I made this ditch, which extended over and into what is now the Smith property." He also stated he had paid no attention to it the last 10 or 12 years.

H. Hanson testified that he had been familiar with that ditch for at least 30 years. He described the course of the ditch. It is true on cross-examination he stated he had not seen the Lower Ellison ditch for a great many years.

Vincent Shurtleff testified: "I have lived there close to 40 years. I cross the main highway about a quarter of a mile from La Bee's property. I don't know when the ditch was made, but it must be 25 or 30 years. It has been used for irrigating about that length of time."

Andrew Severson testified: "In 1866 we came to Utah and located in the vicinity of the Smith and La Bee property. Moved away about 19 years ago. My father, Chris. Nelson, and some one else run the ditch out from father's. I think it is the Y ditch. I don't remember when the ditch was constructed exactly, but not less than 38 years ago. The Y stream was not running all the time. It was used to irrigate up until I left there in 1903."

The defendant, Smith, testified that he had owned the land nearly six years. "Am familiar with the ditch Y. It was an old ditch when I moved there. I have used it during the Lower Ellison period up to some time in the middle of July. The Lower Ellison is a surplus ditch. After the waters get low in the Cottonwood creek the water master shuts us off. We are not allowed any more water." He describes the ditch, and then adds: "It carries quite a nice little stream on account of the speed it travels. I have handled water during a considerable part of my life. I know what a second foot of water would be, but couldn't hardly explain it. I would say the ditch carries a half second foot. I irrigate about 20 acres with that ditch."

It is true there are some contradictory expressions in the testimony of several witnesses, but on the whole there is ample to support the findings made by the court that the ditch had been used for a period at least since 1899, when according to the witness Schelkin, produced by La Bee, he constructed the ditch.

Second. Was the ditch visible when the plaintiff bought his land? He contends it was not, that he could not see it, and did not know of its existence. The evidence is flatly contradictory on this point, but I think it can be reconciled in this way. There is nothing in the evidence showing that La Bee had any familiarity with the subject of irrigation or the practice of it. When he purchased, the ditch might have been somewhat filled up with trash, and overgrown perhaps with weeds or small growth. The evidence shows that the Lower Ellison ditch, from which the Y ditch in question received its supply of water, was a surplus ditch, and its use was not permitted after about the middle of July of each year, and, of course, the same situation would exist in the Y ditch as a lateral of the Lower Ellison ditch that existed in the Lower Ellison ditch itself, having all the rest of the year after July, through the winter and up to the opening of the irrigation season in the spring, to fill up. It would not be at all strange that one not accustomed to irrigation would not see it, but it does not follow that because he did not see it and it was not "visible" to him that the marks of its existence would not be entirely plain to one familiar with irrigation ditches and the effects of the seasons upon them.

The finding of fact upon this point is as follows: "That said Y ditch is very conspicuous, and can be seen readily by any one going upon the plaintiff's said farm." La Bee's counsel calls attention to the fact that it is in the present tense, which would mean that that statement might have been true at the time of the trial and when the finding was signed, but still might not have been true when La Bee bought the property, nor for some time afterwards. For this reason the testimony has been carefully examined on that point, and it is sufficient, notwithstanding some conflict, to sustain

the finding that it was visible when the plaintiff
bought the property. There is no reason, then, for dis-          **2**
turbing the conclusions of law and the decree on that
ground. To make it exact, however, an amendment to con-
form to the proof concerning the time should be made in the
finding.

Third. Assuming then that Smith had a right to use the
ditch as he did, and thus anticipating what is said in the
discussion of the questions of law later in this opinion, for
the purpose of disposing of the third issue of fact, we find
that the damage complained of by La Bee was not caused
by any overt act of Smith's, but by the fact that he drove
his wagon through the Y ditch when the water was running
through it to Smith's land, and broke down the banks of the
ditch so that the water escaped and flooded his own land.
There was therefore no damage for which Smith was re-
sponsible. This question, however, seems to have been tacitly
assumed to have been a minor one. The real thing that La
Bee was undertaking to have decided was his contention that
Smith had no right to use the ditch at all.

We come now to the discussion of the legal questions raised
by La Bee, the plaintiff and appellant.

1. La Bee contends that, as both pieces of property were
once owned by Kinney, Kinney could not acquire the pre-
scriptive right for an easement for a ditch over a piece of
his own land in favor of another, and when he sold the land
claiming the easement, could not, therefore, convey the ease-
ment. Counsel does not cite any authority in support
of this position, and we know of none. If the Y ditch          **3**
had existed and been used by Smith and his predeces-
sors in interest for 20 years, and was visible when the plain-
tiff purchased his property, as the court found, we know of
no reason why such an easement would not pass with the title
to the land to which it was appurtenant.

2. It is contended that as no counterclaim was set up,
and no prayer for judgment in favor of the defendant
whereby he is "granted the right of easement to convey
water" through the ditch and to maintain it, therefore that

part of the judgment must fall. The answer to this is that the facts found by the court against the contention of La Bee necessarily involve the establishment of the rights of Smith to maintain the ditch and convey water through it, and therefore there could be no error in explicitly so stating.

The case cited by counsel, *Rosenthyne* v. *Matthews*, 51 Utah, 38, on page 49, 168 Pac. 957, on page 961, this court, speaking through Mr. Chief Justice Frick, says concerning a similar question arising in that case:

"The findings and judgment are therefore not only not supported by the pleadings in the case, but they are directly contrary to the averments contained in the company's own pleading. * * * Under proper conditions pleadings may, however, be amended as well after as before the evidence is received. The findings and judgment must, however, be based on and find support in the pleadings, and unless the findings and judgment are thus supported they are erroneous and cannot be sustained."

It is sufficient if, from all the pleadings taken as a whole, the issue is necessarily raised and must have been passed upon to warrant the particular form of judgment which the court renders in a given case. We think it is obvious that that is true in this case, and, therefore, that this contention cannot prevail.

3. There remains the contention that a new trial should have been granted because of newly discovered evidence, material to plaintiff, which he could not with reasonable diligence have discovered and produced at the trial. We have read over carefully the affidavits, and cannot see that the court committed any error in overruling the motion for a new trial on that ground.

The judgment is affirmed, with costs.

GIDEON, THURMAN, FRICK, and CHERRY, JJ., concur.