# ALCORN v. READING

No. 4226.   Decided Feb. 8, 1926.   (243 P. 922.)

1. EASEMENTS—NECESSITY FOR EASEMENT, RESERVED BY IMPLICATION, MUST APPEAR, AND LAWS RELATING TO "WAYS OF NECESSITY" SHOULD BE APPLIED (CITING WORDS AND PHRASES, "WAY OF NECESSITY"). In dealing with question of easements reserved by implication, the necessity therefor must be considered, and, so far as applicable, the law relating to "ways of necessity" should be applied; way of necessity is granted to purchaser of land which is accessible only over vendor's land, or reserved to vendor, whose land is accessible only over vendee's land (citing Words and Phrases, "Way of Necessity").

2. EASEMENTS. Way of necessity for ingress and egress across land of another is founded on absolute necessity of the case.

3. EMINENT DOMAIN—IN CASE OF CANALS AND DITCHES, DECLARED TO BE PUBLIC USES BY STATUTE, RIGHT OF CONDEMNATION IS ALLOWED, WHETHER SOUGHT BY PUBLIC OR PRIVATE INDIVIDUAL (COMP. LAWS, 1917, § 7330, SUBD. 5.) Under Comp. Laws 1917, § 7330, subd. 5, declaring canals and ditches and other means of conveying water for beneficial purposes to be public uses, right of condemnation for such purposes is allowed, without regard to whether the right is sought by public, or a private individual. [1]

4. WATERS AND WATER COURSES—RIGHT OF WAY FOR IRRIGATION DITCH, OBTAINABLE UNDER STATUTE OF EMINENT DOMAIN, NOT OBTAINABLE AS WAY OF NECESSITY (COMP. LAWS 1917, § 7330, SUBD. 5). Right of way for irrigation ditch, declared to be public use by Comp. Laws 1917, § 7330, subd. 5, and which is obtainable under statutes of eminent domain, cannot be obtained on theory that it is a way of necessity, enforceable under rules of common law.

---

[1] *Nash* v. *Clark*, 75 P. 371, 27 Utah, 158, 1 L. R. A. (N. S.) 208, 101 Am. St. Rep. 953, 1 Ann. Cas. 300; *Tanner* v. *Canal & Irrigation Co.*, 121 P. 584, 40 Utah, 105.

Corpus Juris-Cyc. References.

[1]   Way 40 Cyc. p. 846 n. 7.

[2-4]   Eminent Domain 20 C. J. p. 575 n. 15.   Waters 40 Cyc. pp. 744 n. 30 New; 828 n. 87.

[5]   Easements 19 C. J. p. 960 n. 61.

[6]   Waters 40 Cyc. p. 828 n. 88 New.

5.  EASEMENTS—ONE CLAIMING WAY OF NECESSITY OVER ANOTHER'S
    LAND HAS BURDEN OF SHOWING THAT NO OTHER WAY CAN BE HAD
    WITHOUT UNREASONABLE EXPENSE.  One claiming a way of neces-
    sity over another's lands has burden of proving that no other
    way can be had without unreasonable labor and expense, and,
    in absence of such showing, no easement will be granted.

6.  WATERS AND WATER COURSES—EMINENT DOMAIN STATUTE PRE-
    CLUDES EASEMENT FOR IRRIGATION DITCH ON THEORY OF IMPLIED
    RESERVATION. (COMP. LAWS 1917, § 7330, SUBD. 5).  An easement
    for an irrigation ditch, on theory of an implied reservation,
    does not exist, however necessary the easement may be, since
    statute of eminent domain provides a complete remedy by
    procedings in condemnation.

Appeal from District Court, Third District, Salt Lake
County; *G. A. Iverson,* Judge.

Action by James A. Alcorn against Charles Reading.
Judgment for defendant, and plaintiff appeals.

REVERSED and remanded, with directions.

*William Waters,* of Midvale, and *D. H. Wenger,* of Salt
Lake City, for appellant.

*D. W. Moffat,* of Murray, for respondent.

THURMAN, J.

In a former opinion filed in this case, which has not been
officially published, the cause was remanded to the court
below with certain suggestions as to further proceedings.  A
rehearing was granted on the application of respondent, upon
the assumption that the court had misconceived respondent's
theory of the case.  As the arguments on rehearing have
tended somewhat to clarify questions as to which the court
entertained serious doubt, the former opinion will not be
officially published or further considered, except as it may be
convenient in the course of this opinion.

This controversy arose over an alleged right of way for an
irrigating ditch.  Plaintiff is the owner of lot 1, block 1,

Eastvale addition, in the town of Midvale, in Salt Lake county. Defendant is the owner of lots 8, 9, 10, 23, 24, and 25, block 3, in the same additon. Plaintiff's lot is situated in the southeast corner of the addition as platted, while defendant's lots are situated near the northwest corner. The plat abuts upon a street on the south known as Center street, running east and west. On the north side of the street, and running parallel therewith, is an irrigation ditch operated by the Union and East Jordan Irrigation Company. This ditch for many years prior to the commencement of this action was used in part for conveying water to irrigate the land afterward platted as the Eastvale addition. The water for irrigating said land was diverted from the ditch above referred to at a point where the southeast corner of plaintiff's lot is now situated, and conveyed water by means of a lateral running along and upon the east side of the lot afterwards conveyed to the plaintiff. Prior to 1917, the land now constituting the Eastvale addition was used as a farm, and the water was used thereon for farming purposes. In 1917 the Russon Investment Company, a real estate concern, purchased the land in question, and caused the same to be platted into lots, blocks, and streets under the name of the Eastvale addition and offered the lots for sale.

The trial court found that one O'Brien, plaintiff's grantor, purchased lot 1 in February, 1918, and that defendant purchased his lots in the month of May of the same year. Plaintiff purchased lot 1 from O'Brien in 1924, at which time he constructed a residence thereon. The east wall of his residence is about 3 feet from the east line of his lot. In the spring of 1924, and after the construction of plaintiff's residence, the defendant, Reading, without the consent of plaintiff, entered upon plaintiff's lot east of his residence where the lateral was situated, ostensibly for the purpose of opening it up or cleaning it out preparatory to irrigating his lots. In this connection it may be stated that defendant purchased a water right for his lots by a separate instrument at the time he purchased the lots. His right to water was represented by stock in the Union & East Jordan Irrigation Com-

pany, operating the water ditch along and upon Center street heretofore referred to.

The entry of defendant upon plaintiff's lot and defendant's attempt to open up and use the lateral referred to, together with defendant's claim of right thereto, constitute the basis of the present controversy between the parties.

Plaintiff alleges in his complaint that defendant has constructed the ditch against the foundation of plaintiff's house, and is threatening to run water through it to lands occupied by defendant, that the same will undermine the foundation of plaintiff's house, and that the injury thereto will be irreparable.

Defendant, as the basis of his claim, relies on the fact that the lateral in question was an old irrigation ditch, open, plain, and visible, and that defendant and his predecessors in interest had used the same for conveying water for irrigation for a period of more than 50 years, and that defendant had used it for the same purpose to water his lots ever since he purchased the same in 1918. Defendant also alleges he has no other means of conveying water to his lots than through the lateral in question. It is further alleged by defendant that from plaintiff's land the water is conveyed by means of a ditch running westerly across other lands to defendant's lots, where the water is used for gardening purposes.

The case was tried to the court, which found in favor of defendant. From the judgment entered thereon, plaintiff appeals.

In view of the theory upon which the case was tried, there is little or no dispute concerning the facts. The Russon Investment Company purchased the property included in the Eastvale plat from one Olsen, who used it for farming purposes. The lateral in controversy was an old water ditch used to carry water from the Union & East Jordan ditch to the lands north and west of appellant's lot now covered by the Eastvale plat. The evidence conclusively shows that the lateral on appellant's lot was open, visible, and plainly observable to any one going upon the land at the time appellant purchased from his grantor O'Brien. It was equally plain, open, and visible when O'Brien purchased from the Russon

Investment Company, and likewise when respondent made his purchase. It is upon this theory that respondent bases his claim to a right of way for the lateral across appellant's land.

From a mere reading of the pleadings, we had some doubt as to the theory upon which the parties based their respective claims, but matters which occurred during the progress of the trial, together with the argument of counsel submitted in their briefs, make it quite clear what the theories of the respective parties are. Appellant claims by virtue of his deed from O'Brien in 1924 and O'Brien's deed from the Russon Investment Company in February 1918, at a time when said company owned all of the land in the plat, together with the water ditches situated thereon. The theory of respondent's claim can best be stated in the language of his attorney during the progress of the trial, when a question arose as to the admissibility of certain evidence. Mr. Wenger, the attorney for appellant, said: "I would like to know what your theory is then, on what theory is it offered?" Mr. Moffat, for respondent, replied: "Under the theory that it is simply an irrigating ditch; that it has been used; that everybody could see it. We know it has been used, and for that reason it can't be closed."

Respondent relies on Devlin on Deeds, vol 2 (3d Ed.) § 841, and quotes therefrom as follows:

"When an owner of land has created an advantage for one part of the land to the detriment of the other, the holders of the two parts upon a severance of ownership take them as they openly and visibly appeared at the time of the deed."

The language quoted appears to make in favor of respondent's contention. The author cites, in support of the text, *Lampman* v. *Milks,* 21 N. Y. 505 and 507. At page 507 of the report, the court states the question to be decided as follows:

"The precise question in this case is whether an owner, who, by such an artificial arrangement of the material properties of his estate, has added to the advantages and enhanced the value of one portion, can, after selling that portion, with those advantages openly and visibly attached, voluntarily break up the arrangement, and thus destroy or materially diminish the value of the portion sold."

Many cases are reviewed in the opinion and practically all of them appear to be cases of the same nature as that described in the above excerpt.

If the order of making the conveyance by the Russon Investment Company to O'Brien and the respondent here were reversed, so as to give the respondent priority in point of time, the case of *Lampman* v.*Milks,* supra, would be strongly in point. But in the instant case we have this situation: The Russon Investment Company, at the time it sold lot 1 to plaintiff's grantor, was the owner in fee of every foot of land in the entire plat, together with all of the water ditches thereon, including the lateral on plaintiff's lot, and everything for which such ditches had theretofore been used. There was nothing whatever, as we understand it, pertaining to the land included in the plat that was not at that time owned by the Russon Investment Company in fee as far as the rights of private individuals were concerned. What rights, if any, the city of Midvale, or the public, may have acquired in respect to streets, etc., are not in question here. In that situation the Russon Investment Company, in February, 1918, sold lot 1 to O'Brien, and gave him a warranty deed therefor without reservation of the easement which respondent now seeks to enforce. O'Brien, without conferring any right whatever upon respondent, either by way of conveyance or othervise, as the evidence expressly shows, afterwards conveyed the lot, by warranty deed, to appellant, and that likewise without reservation as far as the ditch in question is concerned. Respondent purchased his lots from the Russon Investment Company in May, 1918, some three months after appellant's grantor purchased lot 1 from the same company. The question therefore to be determined is, When the Russon Investment Company, the common grantor of both parties here, conveyed lot 1 to O'Brien, appellant's grantor, was there an implied reservation of the easement in question?

In addition to Devlin on Deeds, supra, respondent also quotes the following from 18 C. J. p. 294, § 272:

"It is a general rule that, upon the conveyance of property, the law implies a grant of all the incidents rightfully belonging

to it at the time of the conveyance, and which are essential to the full and perfect enjoyment of the property."

That is sound doctrine in cases to which it applies, but it is begging the question here, for it assumes that the easement in controversy rightfully belonged to respondent's lot at the time he purchased from the Russon Investment Company. That is the very question this court must determine.

It must also be understood that, in the excerpt quoted, the author is stating what is included in a grant to the grantee, not what is reserved by implication to the grantor. There is a fundamental distinction between the two, as will hereinafter appear.

Counsel for respondent also refers us to *La Bee* v. *Smith,* 229 P. 88, 64 Utah, 242, a very recent case decided by this court. The case is analogous to the instant case in several particulars: (1) The controversy was concerning the right of defendant to use an irrigating ditch across land of plaintiff; (2) both parties deraigned title from a common grantor, who at one time owned both parcels of land, and who constructed the ditch in question; (3) the ditch had been in use for at least 25 or 30 years, and was open, plain, and visible when plaintiff purchased his land; (4) plaintiff instituted an action against defendant to enjoin his use of the ditch. At this point the analogy ceases. The vital question here, as we have heretofore stated it, was not involved in the La Bee case. The question as to priority of title and claim thereunder was not in issue, either in the pleadings or the evidence. Besides, in that case the deeds to the land expressly stated, "Together with all water rights thereto belonging." In the case at bar, no water rights were included in the deeds to the lots.

Respondent also cites many other cases, but they appear to fall within the rule announced in C. J., supra, which we have held not decisive of the question presented here.

In Jones on Easements, § 137, it is said:

"The fact that one has been in the habit of using certain land in connection with his adjoining premises does not create an easement upon the first named land, which, upon a conveyance or devise of that land, without words of exception or reservation, will be annexed to such premises."

See, also, 13 Cyc. 675, and 18 C. J. 344, in which it is stated that "the law will not reserve anything out of a grant in favor of the grantor except in case of necessity."

In a comprehensive note to the case of *Powers* v. *Ward* (255 S. W. 105, 200 Ky. 478), reported in 34 A. L. R. 230, the annotator, at page 242, makes the following statement:

"Where an owner who has used a roadway or pathway over one part of his land for the benefit of another part of his land conveys the part over which the way passes, he will not reserve by implication a right to use the way for the benefit of his remaining land, unless it be a way of necessity."

In support of this rule, the annotator cites cases from Alabama, Kentucky, Maryland, Massachusetts, Mississippi, Missouri, New Jersey, New York, Vermont, West Virginia, Wisconsin, and England. We have examined a large number of the cases referred to, and find they amply support the text. The annotator, in the same note, at page 233, states the rule substantially as above quoted, and says it is supported by the great weight of authority. Two or three cases from Pennsylvania and England are referred to on page 243 as announcing a contrary doctrine. In the same volume and on the same page the annotator says:

"There are a number of cases which hold, where an owner, who has used a way over one part of his property for the benefit of another part of his property, sells both parts at the same time to different purchasers, that a right to use the way will pass by implication to the purchaser of the part so benefitted"—citing many cases.

But in the instant case the property purchased by the respective parties was not sold by the grantor at the same time; hence the rule announced in the last quotation has no application here.

We have not deemed it necessary to incumber this opinion with references to specific cases, inasmuch as they all appear in the note referred to. It is sufficient to say that the cases cited are generally in point, and support the rule announced in the excerpts quoted.

In his brief on application for a rehearing, appellant calls our attention to numerous authorities not referred to in his

original brief. Reference is made to Farnham on Water and Water Rights, in which a question somewhat analogous to the question here is discussed at considerable length. After stating the rule that a sale of land conveys the easements pertaining thereto, the author, at page 2447, vol. 3 of the work, enters upon a consideration of ''Easements in Favor of Retained Estate;'' in other words, implied reservations in favor of the grantor. As to these it is said:

"Upon the question as to whether or not, in case the owner, after erecting an artificial condition in favor of one portion of his property, conveys the servient portion without expressly reserving the easement, the portion granted will be subject to the burden, the courts are not in accord."

English cases are reviewed pro and con, and the conclusion finally reached that, if it is an easement of necessity artificially constructed, open, apparent, and continuous, it will be reserved by implication. It is also shown by the author that there is some conflict on the same question among the American cases. These are referred to in the note. Farnham himself appears to be of opinion that in such cases there is an implied reservation in favor of the grantor. The fundamental objection to the rule given by the courts which hold to the contrary is that it derogates from the grant, and if a reservation is intended, it should be expressly stated in the grant.

It is impracticable, without extending this opinion to an undue length, to review in detail the cases cited by Farnham in the discussion of this question. They practically all relate to continuous easements such as drains and water courses appurtenant to houses or lands, and are held to be necessary to the dominant estate to which they belong. Upon the question of *necessity,* after briefly reviewing the cases, commencing with *Pyer* v. *Carter,* the first English case referred to, at page 2453, the author says:

"Even the courts which have refused to follow *Pyer* v. *Carter* to its full extent of holding that the easement will continue in case of a sale of the servient portion of the estate, if, in its then condition, the easement was necessary for the enjoyment of the retained portion, have held that it would continue if it was actually necessary for the enjoyment of the retained estate. The limits of

this doctrine are practically the same as those of ways of necessity, by which, when the sale is made of land entirely surrounding another parcel, there is a way of necessity from the latter to the highway across the portion sold."

It therefore appears that, in dealing with the question of easements reserved by implication, the necessity for such easement is a factor to be considered, and so far as applicable, the law relating to ways of necessity should be applied.

There can be no controversy as to what constitutes a common-law "way of necessity." 3 Bouvier (Rawles' 3d. Revision) p. 3444, says:

"Where a man purchases land accessible only over the land of the vendor, or sells, reserving land accessible only over land of the vendee, he shall have a way of necessity over the land which gives access to his purchase or reservation."

8 Words and Phrases, at pages 7418 and 7419, gives a variety of definitions, all meaning practically the same thing. We select the following as a type:

"A 'way of necessity' is founded upon an implied grant. When a person grants land to which there is no right of way except over his land, or retains land" so surrounded by other land, "which is inaccessible except over the land which he conveys, a right of way is presumed to have been granted or reserved."

On page 7419, the same authority says:

"There cannot be said to be a way of necessity where there are other reasonably practicable ways of ingress and egress."

On the same page, in the last column, it is said:

"There is a way by necessity, where another cannot be got or made without unreasonable labor and expense."

The common-law doctrine relating to "ways of necessity" undoubtedly was founded upon the absolute necessity of the case. Without such rule there was no means by which the right could be enforced against the consent of the owner. No right of condemnation was allowed if the right sought was for a private purpose. The same rule exists to-day in this jurisdiction in the case of ways of necessity for ingress and egress across the land of another. A different rule applies in this state in the case of canals and ditches and other means of conveying water for beneficial purposes. These are

declared to be public uses by statutory provisions. Comp. Laws Utah 1917, § 7330, subd. 5. The right of condemnation for such purposes is thereby allowed without regard to whether the right is sought by the public or by a private individual. *Nash* v. *Clark*, 75 P. 371, 27 Utah, 158, 1 L. R. A. (N. S.) 208, 101 Am. St. Rep. 953, 1 Ann. Cas. 300, confirmed on appeal to the Supreme Court of the United States, 25 S. Ct. 676, 198 U. S. 361, 49 L. Ed. 1085, 4 Ann. Cas. 1171; *Tanner* v. *Canal & Irrigation Co.*, 121 P. 584, 40 Utah, 105, also confirmed on appeal, 36 S. Ct. 101, 239 U. S. 323, 60 L. Ed. 307. It follows, therefore, that in this jurisdiction, where a right of way for an irrigation ditch can be obtained under the statute of eminent domain, the right cannot be obtained on the theory that it is a way of necessity, enforceable under the rules of the common law.

In our former opinion, in remanding the cause to the trial court, we specifically submitted for consideration the question whether a way of necessity for an irrigating ditch would be reserved by implication from an absolute grant in fee simple in this state, in view of our statute of eminent domain. No attempt was made to answer the question, the parties evidently assuming that the question was irrelevant and immaterial. Nevertheless, it is a matter of deep concern to the court. If we are right in our conclusion that the easement claimed here can be claimed only on the theory of an implied reservation, coupled with the grounds of necessity, it cannot be contended that the necessity confers the right as at common law, because, as before stated, the right here can be compelled by condemnation—a remedy which the common law does not afford.

Even if it be assumed that the court is in error in holding that the right of condemnation should be substituted for the right which existed at common law, still it is not clear that respondent would be entitled to a decree for the easement in question. Under the most liberal example which we have been able to discover, to wit, that "there is a way by necessity where another cannot be got or made without unreasonable labor and expense," it does not satisfactorily appear that respondent, upon whom devolved the

burden of the proof, discharged the burden in the instant case. No effort was made to show that a right of way could not be obtained "without unreasonable labor and expense."

Besides these considerations, there is a suggestion in the brief of appellant calling attention to another feature of the case. Prior to the purchase of the land involved in this action by the Russon Investment Company, it had been used for farming purposes. The ditch in dispute was used for irrigating the land as a farm. The Russon Investment Company purchased the tract and platted it into lots, blocks, and streets for residential purposes. An artificial arrangement was thus created by the owner of the entire tract, entirely changing the purpose for which the tract had theretofore been used. In these circumstances the question is, When appellant's grantor purchased his lot, even though he might have seen there was indication of an old ditch thereon, was he bound to assume that the ditch had not been abandoned by the Russon Investment Company in the changed conditions to which we have referred? When the Russon Investment Company, under the circumstances, executed to him an absolute deed in fee simple, what reason had he to believe that there was an implied reservation in favor of the grantor? We suggest these questions, not with the view of basing our decision upon the grounds indicated by the questions, but for the purpose of showing that upon no conceivable theory, deducible from the situation disclosed by the record, can it be contended that respondent's right to the easement in controversy is free from doubt. We base our decision, however, upon the proposition that an easement for an irrigation ditch upon the theory of an implied reservation does not exist in this state, however necessary the easement may be, for the reason that the statute of eminent domain provides a complete remedy by proceedings in condemnation.

In answer to a suggestion made in respondent's brief, we are of opinion that his fears are groundless as to the consequences resulting from the conclusions we have reached. The grantor of real property can always protect himself and his subsequent grantees by an express reservation in the grant

to his prior grantee. In such case there can be no necessity for condemnation.

It is apparent from the record that a new trial will not result in a different conclusion.

For the reasons stated, the judgment is reversed, and the cause remanded, with directions to the trial court to enter judgment and decree for appellant, at respondent's cost.

GIDEON, C. J., and FRICK, CHERRY, and STRAUP, JJ., concur.