BACKHAUSEN and another, Appellants, vs. MAYER and others, Respondents.

*January 14—April 7, 1931.*

L. P. *Fox* of Chilton, for the appellants.
*Helmuth F. Arps* of Chilton, for the respondents.
The following opinion was filed February 10, 1931:

OWEN, J. This action is brought by the plaintiffs to restrain the defendants from trespassing upon their premises and breaking down and destroying gates maintained thereon. The defendants admit their conduct *vi et armis,* but justify on the ground that the *locus in quo* was a way of necessity, to the use of which they were entitled, and that their conduct was no more than necessary to enable them to enjoy their lawful rights. The facts giving rise to the claimed way of necessity are as follows: On December 7, 1885, one Christian Mayer was the owner of the east half of the southwest quarter of a certain section of land. On that day he sold the north twenty-five acres thereof to one Michael

Mayer, the father of the defendant William J. Mayer. The twenty-five acres thus conveyed were shut off on all sides from a highway. It is claimed that by reason of this situation a way of necessity over the remaining fifty-five acres of said east half of the southwest quarter arose to enable the grantee to have access to a highway and to enjoy the beneficial use of the north twenty-five acres so conveyed.

The condition arising from the severance of the twenty-five acres on the north of the eighty gave rise to the typical situation from which ways of necessity are implied over that portion of the premises retained by the grantor. *Dillman v. Hoffman,* 38 Wis. 559; *Jarstadt v. Smith,* 51 Wis. 96, 8 N. W. 29; *Galloway v. Bonesteel,* 65 Wis. 79, 26 N. W. 262; *Johnson v. Borson,* 77 Wis. 593, 46 N. W. 815; *Benedict v. Barling,* 79 Wis. 551, 48 N. W. 670; *Miller v. Hoeschler,* 126 Wis. 263, 105 N. W. 790. It is a general rule that a way of necessity is not merely one of convenience, and it never exists where one may reach the highway over his own land, even though it may be difficult and expensive to accomplish it. There is some difference in the authorities concerning the extent of the obstacles to be encountered in making a way on one's own land that will give rise to a way of necessity over the lands of one's grantor (see note in 5 A. L. R. 1557), some claiming that no amount of physical difficulty in reaching the highway over one's own land will give rise to the way, while others state the test to be whether the easement is one for which a substitute cannot be furnished by reasonable labor and expense. 9 Ruling Case Law, p. 764.

Stressing the point that implied covenants have been abolished by statute in this state, and that implied easements are not favored (*Depner v. United States Nat. Bank,* 202 Wis. 405, 232 N. W. 851), it is contended by appellants that a way of necessity should not be recognized in this case because defendants now and at all times did have it in their

power to acquire a highway to their premises under sec. 80.13, Stats., which confers authority upon the town board to lay out a highway to premises excluded therefrom where the owner of such premises offers to pay the expense of laying out such highway. This contention would not be without force in view of our statutory provision abolishing implied covenants in grants of land and the disfavor in which implied easements are held by this court were the duty of the town board at the request of the landowner absolute. However, the statute but vests a discretion in the town board to lay out the highway, and while such discretion is intended to be and probably generally is generously exercised to accommodate the landowner, it cannot be said as a matter of law that the right of the landowner to thus acquire an access to the highway is absolute. In view of the fact that the way of necessity is one implied by the law, it would not be unreasonable to say that the law will not imply such a way where it has provided another method for obtaining the same at a reasonable expense to the landowner. However, as we have seen, the law does not give to the landowner an absolute right to acquire a way under sec. 80.13, and we conclude that as between the original grantor and grantee a way of necessity arose over the south fifty-five acres for the benefit of the north twenty-five acres, and defendant William J. Mayer, who is now the owner of the north twenty-five acres, succeeded to that right.

In 1895 Christian Mayer conveyed the south fifty-five acres, or the servient estate, to Albert Hanke, who in 1899 conveyed it to the father of the plaintiffs, from whom they inherited it. The question is whether under our recording statutes Albert Hanke took title to the servient estate burdened with the easement of this right of way. Under our recording statutes it is necessarily held that a *bona fide* purchaser of land without knowledge or actual or constructive notice of the existence of an easement takes title to the same

relieved of the burden or charge of the easement. 9 Ruling Case Law, p. 805; 19 Corp. Jur. p. 940; *Taggart v. Warner,* 83 Wis. 1, 53 N. W. 33. When Hanke purchased the servient estate in 1896 he therefore took it free and clear of the burden of the easement unless he had knowledge or notice, actual or constructive, of the existence of this way of necessity.

The weight of authority is to the effect that if a deed or a contract for the conveyance of one parcel of land, with a covenant or easement affecting another parcel of land owned by the same grantor, is duly recorded, the record is constructive notice to a subsequent purchaser of the latter parcel. See note to *Hancock v. Gumm,* 16 A. L. R. 1013. That this doctrine, however, is not universal appears by a further consideration of the same note. Our reference here is not made for the purpose of indorsing either the minority or the majority rule or expressing any opinion with reference thereto. In this case the easement was not created by express covenant in the grant of the north twenty-five acres, and an examination of the record of that deed by Hanke when he purchased the servient estate would not have advised him of the existence of this way. While it has been held that where an examination of the record title of the grantor of the property across which plaintiff claimed a right of way of necessity would have disclosed his former ownership of the property for which such way was claimed, and the grantee, before purchasing, had a survey made which showed that complainant's property was an isolated lot with no highway as a means of access to it, the visible conditions thus actually ascertained, in connection with the information disclosed by the record, were operative to charge the grantee with notice of complainant's rights (*Higbee Fishing Club v. Atlantic City Electric Co.* 78 N. J. Eq. 434, 79 Atl. 326), yet it does not appear in this case that Hanke made the investigation

which was necessary to apprise him of the fact that the north twenty-five acres were so owned as to be excluded from a highway. An examination of the record would have revealed to him that his grantor at one time owned the north twenty-five acres and that he had conveyed it, but the record would not have advised him that it was conveyed to one who had no access to a highway. The most that might be said is that when the record revealed a former co-ownership by Hanke's grantor of the dominant and servient estate he was put upon inquiry to ascertain whether the severance of the ownership of the two estates was of such a nature as to give the owner of the dominant estate a way of necessity over the servient estate which he was then purchasing. Such a doctrine would be unreasonable. We know of no authority supporting it, outside of certain cases such as *Logan v. Stogsdale,* 123 Ind. 372, 24 N. E. 135; *Wissler v. Hershey,* 23 Pa. St. 333, and *Zimmerman v. Cockey,* 118 Md. 491, 84 Atl. 743, which seem to hold that the purchaser of the servient estate takes it subject to the easement whether he had notice thereof or not,—a doctrine which must be repudiated if any effect is to be given to our recording act. Such a doctrine would be the exercise of an unreasonable solicitude for a negligent grantee who fails to exact an express covenant granting to him the right of way necessary for the beneficial enjoyment of his premises. We conclude, therefore, that the public record afforded Hanke no notice, actual or constructive, of the existence of this way. Neither were there any visible conditions which amounted to notice thereof. The dominant estate was a wood lot. It was covered with timber. It has not yet all been removed. It does not even appear that a considerable portion thereof has been removed. While it does appear that for the last ten years timber has been hauled from the lot, sometimes over plaintiffs' and sometimes over other adjoining premises, it

does not appear that any considerable quantity of timber was hauled prior to 1895. What hauling was done was in the winter time when the snow was on the ground. An inspection of the premises in 1895 would have revealed no evidence whatever of the existence of this way. While the court found that the way had been used in recent years, there is no contention that it had been used adversely so as to give rise to a way by prescription as against the plaintiffs, nor is there any evidence that the plaintiffs or their father had any knowledge of the existence of the way.

The conclusion seems to be inevitable that the way of necessity with which the servient estate was undoubtedly burdened during the time it was owned by Christian Mayer was extinguished when Christian Mayer conveyed to Hanke in 1895. The finding of the court that a way of necessity over plaintiffs' premises exists at the present time for the benefit of the defendants was erroneous, and the judgment entered in favor of the defendants upon such finding must be reversed.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings according to law.

On motion for a rehearing there was a brief by *Helmuth F. Arps* of Chilton for the respondents, and by *Fox & Fox* of Chilton for the appellants.

The motion was denied, with $25 costs, on April 7, 1931.