WALDEMAR W. SIMONSON AND ELSIE A. SIMONSON, HUSBAND AND WIFE, PLAINTIFFS AND RESPONDENTS, *v.* JOHN A. McDONALD AND MARGUERITE McDONALD, HUSBAND AND WIFE, DEFENDANTS AND APPELLANTS.

No. 9295.

311 Pac. (2d) 982.

Submitted April 25, 1957. Decided May 31, 1957.

Messrs. Loble & Loble & Mr. Gene A. Picotte, Helena, Messrs. Fitzgerald, Ammerman & Bodine, Livingston, for appellant.

Mr. Vard Smith, Messrs. Berg & Pfohl, Livingston, Mr. Ralph J. Anderson, Helena, for respondent.

Mr. David B. Fitzgerald and Mr. Ben E. Berg, Jr., argued orally.

MR. JUSTICE ANGSTMAN:

This action was brought by plaintiffs seeking a decree establishing a right of way across defendants' land based upon necessity.

The complaint alleges and the evidence shows that plaintiffs acquired Section Thirty-one (31), Township eight (8) south, Range seven (7) east, in Park County on September 28, 1951, by grant from the Northern Pacific Railway Company. The defendants acquired the south half of the south half of Section Twenty-nine (29), Township eight (8) south, Range seven (7) east, in Park County from the Northern Pacific Railway Company, some of it having been acquired in 1931 and the balance in 1933 at which time the Northern Pacific Railway Company also owned Section 31 which it conveyed to plaintiffs on September 28, 1951, as above noted. All of the land now owned by plaintiffs and defendants above described is located in what is known as Cinnibar Basin in Park County. Section 31 is chiefly valuable for timber and grazing purposes. It is bounded on the west, north and south by mountains and lies in the hollow of a basin formed by the watershed of what is known as the main Lion Hollow Creek and its North Fork.

Plaintiffs' contention is that the only means of ingress and egress to and from their land is along the creek bottom of Lion Hollow Creek and across defendants' land situated easterly and northerly from plaintiffs' land to a public highway that reaches the northeast corner of defendants' land. The court made findings of fact and conclusions of law in favor of plaintiffs and found that plaintiffs have an implied easement by

necessity in and over the lands of defendants, and ordered plaintiffs to select such right of way and have it platted and return the plat to the court for approval. This was done. The court heard further testimony regarding the highway as platted, and approved the plat and granted plaintiffs the right of way across defendants' land over which to remove the timber and to move livestock.

The appeal is by defendants from the judgment and decree. The theory advanced by counsel for plaintiffs and adopted by the court is that when the Northern Pacific Railway Company sold the land to defendants in 1931 and 1933 it reserved by implication an easement by necessity over the lands thus conveyed. Likewise when the Northern Pacific Railway Company conveyed to plaintiffs Section 31, there was an implied conveyance of the easement across defendants' lands.

Implied reservations and implied grants are common-law doctrines founded upon necessity. Whether they have any standing in this jurisdiction depends upon our statutes.

Common-law rules have been supplanted in this jurisdiction by statutory law in all fields covered by statute. That is the effect of R.C.M. 1947, section 12-104, which reads:

"In this state there is no common law in any case where the law is declared by the code or the statute; but where not so declared, if the same is applicable and of a general nature, and not in conflict with the code or other statutes, the common law shall be the law and rule of decision."

R.C.M. 1947, section 12-103, provides: "The common law of England, so far as it is not repugnant to or inconsistent with the constitution of the United States, or the constitution or laws of this state, or of the codes, is the rule of decision in all the courts of this state."

We have a statutory provision in this state (R.C.M. 1947, section 67-1616) bearing on this question of implied covenants which reads:

"From the use of the word 'grant' in any conveyance by which an estate of inheritance or fee simple or possessory title

is to be passed, the following covenants, *and none other,* on the part of the grantor for himself and his heirs to the grantee, his heirs and assigns, *are implied,* unless restrained by express terms contained in such conveyance:

"1. That previous to the time of the execution of such conveyance, the grantor has not conveyed the same estate, or any right, title, or interest therein, to any person other than the grantee.

"2. That such estate is at the time of the execution of such conveyance free from encumbrances done, made, or suffered by the grantor, or any person claiming under him.

"Such covenants may be sued upon in the same manner as if they had been expressly inserted in the conveyance." (Emphasis supplied.)

This section abolishes all implied covenants except the two enumerated. The two excepted do not reach the question here involved.

There are still other statutes that point to the conclusion ▮ that there are no implied grants or reservations of rights of way of necessity in this state. An easement for a right of way is clearly an interest in real property which to be valid must be in writing. R.C.M. 1947, sections 13-606, and 74-203.

What was said by the supreme court of Wisconsin in Dill- ▮ man v. Hoffman, 38 Wis. 559, has application here. In that case the court said:

"We may say, however, in passing, that it is always safest to let written contracts speak for themselves. This rule is often relaxed with doubtful expediency. Parties ought to make their own contracts complete. Alienations of land are, or ought to be, grave and deliberate transactions. Every conveyance should contain 'the certainty of the grant. What may be expressed enlarging or restricting the grant in particular cases, should not be left to implication. It is often difficult, as the cases show, to determine what shall be implied in conveyances, by way of grant or reservation of easement: what parties, who might have spoken, shall be held to intend by their silence. And,

because 'a deed shall be construed most strongly against the grantor,' this view applies with great force against implied reservations in the servient estate conveyed by the owner of the dominant estate. Indeed it is remarkable that the doctrine of implied grant of easement in the land of the grantor once rested very much on the principle that the grantor should not be heard to derogate from his grant (Howton v. Frearson, 8 T.R. 50); and yet the same doctrine has been extended to implied reservations to the grantor in what he conveys, in direct derogation from his grant. On principle, therefore, we should be disinclined to enlarge or limit estates granted, by implications of law, further than a general current of decision might oblige us.

"Such seems to be the policy of our legislation. The common law implied covenants from some words used in conveyances. That is now forbidden by statute (R.S., ch. 86, secs. 5, 6); for the reason, we take it, that it is better to leave parties to express their covenants: a reason equally applicable to implied grants and reservations."

If we overlook the difficulty arising by virtue of the statute ██ of frauds and the statute abolishing implied covenants we still come to other provisions of the statute that defeat plaintiffs' right here.

The common-law rule grew out of absolute necessity. There was at common law no means of condemning property for private purposes, but in this state the statute defines public uses so as to embrace "Private roads leading from highways to residences or farms." Section 93-9902, subd. 6. And likewise the Constitution authorizes the opening of private roads in the manner to be provided by law. Art. III, section 15. And "Temporary logging roads * * * for the transportation of logs and timber products to * * * highways, for such time as the court or judge may determine; * * *" are declared to be public uses. Section 93-9902, subd. 13.

In such cases damages or compensation must be paid for the road. Sections 93-9923 and 93-9925; Sec. 15, Art. III of our Constitution.

The case of Backhausen v. Mayer, 204 Wis. 286, 234 N.W. 904, 905, 74 A.L.R. 1245, considered this same question. In that case the court pointed out that in Wisconsin, as in Montana, implied covenants have been abolished. The court was considering the contention that where there existed the right of condemnation there was no room for implied reservations or grants. It held however in that case that since the right of eminent domain was not absolute but rested in the discretion of the town board the remedy by condemnation was not adequate. The court said:

"This contention would not be without force, in view of our statutory provision abolishing implied covenants in grants of land, and the disfavor in which implied easements are held by this court were the duty of the town board at the request of the landowner absolute. However, the statute but vests a discretion in the town board to lay out the highway, and, while such discretion is intended to be, and probably is, generously exercised to accommodate the landowner, it cannot be said as a matter of law that the right of the landowner to thus acquire an access to the highway is absolute. In view of the fact that the way of necessity is one implied by the law, it would not be unreasonable to say that the law will not imply such a way where it has provided another method for obtaining the same at a reasonable expense to the landowner." In this state however the right of eminent domain is absolute and does not rest upon the discretion of anyone, if a proper showing can be made by the property owner that the way is needed. In State v. Black Bros., 116 Tex. 615, 297 S.W. 213, 219, 53 A.L.R. 1181, the court in speaking of this same question said:

"The existence of the power [of eminent domain] would seem to negative the strict necessity on which the implication of the reservation of the right of way * * * must be grounded."

This question was considered by the Supreme Court of Utah in Alcorn v. Reading, 66 Utah 509, 243 Pac. 922, 926, and the Court disposed of the question by saying:

"The common-law doctrine relating to 'ways of necessity' un-

doubtedly was founded upon the absolute necessity of the case. Without such rule there was no means by which the right could be enforced against the consent of the owner. No right of condemnation was allowed if the right sought was for a private purpose. The same rule exists today in this jurisdiction in the case of ways of necessity for ingress and egress across the land of another. A different rule applies in this state in the case of canals and ditches and other means of conveying water for beneficial purposes. These are declared to be public uses by statutory provisions. Comp. Laws Utah 1917, section 7330, subd. 5. The right of condemnation for such purposes is thereby allowed without regard to whether the right is sought by the public or by a private individual. Nash v. Clark, 27 Utah 158, 75 Pac. 371, 1 L.R.A., N.S., 208, 101 Am. St. Rep. 953, 1 Ann. Cas. 300, confirmed on appeal to the Supreme Court of the United States, 25 S. Ct. 676, 198 U.S. 361, 49 L. Ed. 1085, 4 Ann. Cas. 1171; Tanner v. [Provo Bench] Canal & Irrigation Co., 40 Utah 105, 121 Pac. 584, also confirmed on appeal, 36 S. Ct. 101, 239, U.S. 323, 60 L. Ed. 307. It follows, therefore, that in this jurisdiction, where a right of way for an irrigation ditch can be obtained under the statute of eminent domain, the right cannot be obtained on the theory that it is a way of necessity, enforceable under the rules of the common law.''

The court overruled the Alcorn case in Adamson v. Brockbank, 112 Utah 52, 185 Pac. (2d) 264, 274. Both cases had to do with a right of way or ditch for carrying water. In the Adamson case the court pointed out that the right of condemnation in a water case might not provide an adequate remedy by saying:

''If the course to be condemned had to be constructed through Columbia Village, which is now built up with homes, then the cost of obtaining the right of way might well exceed the value of the estate acquired by respondents. If it were not practical to construct the ditch through the village, it would be necessary for respondents to condemn and construct a ditch around the subdivision. That such condemnation might require the payment for other expensive properties is entirely possible and the costs

of condemnation, together with additional construction costs, might prohibit recourse to this procedure."

That reasoning would not apply to a temporary logging road. The reasoning of the court in the Alcorn case is unanswerable when applied to the circumstances under which a temporary logging road may be obtained in this state.

We conclude therefore that in this state there can be no implied reservations or implied grants of easement by necessity. They may be obtained in eminent domain proceedings if proper showing be made of the necessity therefor.

We have not overlooked the fact that this court has heretofore recognized implied grants and reservations of easements necessary for ingress and egress. Herrin v. Sieben, 46 Mont. 226, 127 Pac. 323; Violet v. Martin, 62 Mont. 335, 205 Pac. 221. Neither of these cases refer to our statute abolishing implied covenants nor to our statute abolishing the common law on subjects covered by our statute nor to our statutes on eminent domain. To the extent that they recognize implied easements or grants of a right of way by necessity where such easements or rights of way may be obtained in eminent domain proceedings, they are hereby expressly overruled.

For the foregoing reasons the judgment appealed from is reversed and the action ordered dismissed.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICES CASTLES and BOTTOMLY, concur.

MR. JUSTICE ADAIR: (dissenting in part but concurring in result).

I concur in the result but not in all that is said in the foregoing majority opinion. The carefully considered decisions in Herrin v. Sieben, 46 Mont. 226, 127 Pac. 323, and Violet v. Martin, 62 Mont. 335, 205 Pac. 221, should not be overruled, for in my opinion the facts and circumstances which there obtained, and the rules of law there applicable, are readily distinguishable from those of the instant case. Accordingly I dissent to

502

the overruling of the Herrin case, supra, and of the Violet case, supra.