JUSTICE NELSON,
dissenting.
¶50 “Few things are as certain as death, taxes and the legal entanglement that follows a sale of landlocked real estate.” Bob Daniels and Sons v. Weaver, 681 P.2d 1010, 1013 (Idaho App. 1984). This entanglement is made all the worse when the litigation is poorly pleaded, poorly researched, poorly briefed, and poorly argued-as unfortunately is the case here.[1] Nevertheless, it is apparent on the face of the record that the easement by necessity claimed by the Ashbys *80 does not exist for the simple reason that at the time the alleged I dominant tenement (the Ashbys’ property) and the alleged servient tenement (Maechling and Alcosser’s property) were severed from common ownership, they were held by a public entity (Ravalli County) which had the power to condemn a right-of-way, and thus there was no “strict necessity” for an easement.
¶51 At the outset, I note that Maechling and Alcosser’s current counsel made this exact point during oral argument and in the Appellees’ Cross Appeal Reply Brief on appeal. The problem is that neither he nor his predecessor argued this specific legal theory in the District Court, and “[t]he general rule in Montana is that this Court will not address either an issue raised for the first time on appeal or a party’s change in legal theory.” Unified Indus., Inc. v. Easley, 1998 MT 145, ¶ 15, 289 Mont. 255, 961 P.2d 100.
¶52 There is an important exception to this general rule, however-one which applies in the present case. In Leichtfuss v. Dabney, 2005 MT 271, 329 Mont. 129, 122 P.3d 1220, the parties were arguing over whether Dabney’s use of the easement in question constituted an increased burden on Leichtfuss’s servient property. But both parties largely ignored the antecedent issue of whether the easement, which had been established through prescriptive use by the holder of a life estate, survived the termination of that life estate. At best, the briefing on this issue was “not particularly artful” and the parties’ arguments were “underdeveloped.” Leichtfuss, ¶ 37 n. 8. Yet, although under these circumstances we might otherwise have declined to address the issue, we observed that
“a court may consider an issue ‘antecedent to ... and ultimately dispositive of the dispute before it, even an issue the parties fail to identify and brief.” United States Nat. Bank of Ore. v. Independent Ins. Agents of America, Inc. (1993), 508 U.S. 439, 447, 113 S.Ct. 2173, 2178. Similarly, “[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.” United States Nat. Bank of Ore., 508 U.S. at 446, 113 S.Ct. at 2178 (internal quotation marks omitted) (alteration in original). Indeed, as we have previously recognized, “ ‘ * * * If the court were limited to the arguments and reasoning of counsel in its decisions of cases, to the exclusion of its own observations, many cases would lead us far from what we understand to be the true object of the court.’ ” Kudrna v. Comet Corp. (1977), 175 Mont. 29, 51, 572 P.2d 183, 195. Moreover, if the *81 boundaries of our opinions were circumscribed by the inadequacies of the briefs submitted on appeal, then in many cases we would be issuing opinions that set bad precedent and confuse, rather than clarify, the law.
Leichtfuss, ¶ 37 n. 8 (ellipsis, asterisks, and brackets in original). In light of these principles, we held that “it is appropriate for us to address the issue [related to the termination of the life estate] since it is an integral step in our analysis.” Leichtfuss, ¶ 37 n. 8; see also e.g. Confederated Salish and Kootenai Tribes v. Clinch, 2007 MT 63, ¶ 14, 336 Mont. 302, 158 P.3d 377 (“Though not squarely addressed by the parties, we must address this issue of tribal sovereignty ... as a necessary predicate to deciding whether change of use proceedings of this type are permissible under Montana law.” (citing Leichtfuss, ¶ 37 n. 8)).
¶53 In the present case, the issue of whether the alleged easement by necessity exists was squarely presented to the District Court and has been squarely presented to this Court. And the same is true of the more specific question of whether “strict necessity” existed at the time of severance. In this regard, Maechling and Alcosser have always maintained that there was no “strict necessity” for an easement over what is now their property. While the specific theory that Ravalli County lacked “strict necessity” because it had the power to condemn an easement was raised belatedly, addressing this issue is an integral step in our analysis and is ultimately dispositive of the dispute before us. Indeed, as discussed below, the law fully supports Maechling and Alcosser on this point. Thus, we “set bad precedent and confuse, rather than clarify, the law” by ignoring Maechling and Alcosser’s argument and affirming an easement by necessity despite caselaw to the contrary.[2] Leichtfuss, ¶ 37 n. 8.
¶54 Turning, then, to the question of “strict necessity,” I conclude that the following undisputed facts and well-established legal principles dictate the resolution of this case.
¶55 1. The real properties at issue here, now owned by Ashbys, Maechling, Alcosser, and Dalton, were held in common ownership by *82 Ravalli County in 1934. All of these properties, in turn, were part of a larger tract the County acquired by tax deed in 1932. The larger tract is referred to in the record as the “Tax Parcel.”
¶56 2. In July 1934, the County conveyed the properties now owned by Maechling, Alcosser, and Dalton, plus several adjoining tracts, to George W. Jones. The County retained the property now owned by the Ashbys (hereinafter, the Ashby Property). The following depiction of the properties is included as an exhibit to the Ashbys’ motions for summary judgment. It has been reduced to 6.5 inches wide so that it could fit on the following page, and labels have been added identifying the properties. Also, the Ashbys’ original diagram misrepresents the full extent of the Tax Parcel. Based on the property description contained in the 1932 tax deed to Ravalli County, the Tax Parcel also includes the shaded area shown below.
[[Image here]]
*83 The Tax Parcel is represented by the heaviest bold line, and the relevant properties within the Tax Parcel are represented by the lighter bold lines and the dashed lines. The Ashby Property consists of the three adjoining tracts that are each numbered 7. The property sold to Jones consists of the seven adjoining tracts that are numbered 9,10, 5, 16, 11, 14, and 15 (collectively, the Jones Tracts). Of these, Maechling and Alcosser now own the tracts numbered 9 and 10 (hereinafter, the Maechling Property), and Dalton now owns the tract numbered 16. West County Line Road (WCL Road) runs along the boundary between Missoula County (to the north) and Ravalli County (to the south). WCL Road approaches from the east, and the record reflects that the road terminates at the northwest corner of Dalton’s property. The easement claimed by the Ashbys, therefore, would connect the Ashby Property to WCL Road over the Maechling Property.
¶57 3. When it transferred the Jones Tracts to Jones in 1934, Ravalli County failed to expressly reserve an easement over that land for the benefit of the Ashby Property. Specifically, the County failed to expressly reserve an easement connecting the Ashby Property to WCL Road via the Maechling Property. As a result, the Ashby Property supposedly became “landlocked,” i.e., “[sjurrounded by land, with no way to get in or out except by crossing the land of another,” Black’s Law Dictionary 894 (Bryan A. Garner ed., 8th ed., West 2004). I say “supposedly” because the record is patently inconclusive on this point. For one thing, the Ashbys have not shown that all property (other than the Jones Tracts) adjacent to the Ashby Property at the time of severance was held or owned by someone other than Ravalli County. Indeed, the record is unclear as to whether the County, at this time, retained other properties within the Tax Parcel besides the Ashby Property and whether the County, at this time, held other properties adjacent to the Tax Parcel. See State v. Cronin 179 Mont. 481, 488, 587 P.2d 395, 400 (1978) (‘We caution court and counsel to explore these factual questions where an implied ... easement by necessity is asserted. Examination of the titles to the surrounding parcels would provide a reliable indication of whether strict necessity existed when the land in question was conveyed. We therefore reverse the finding of implied easement by necessity, there being insufficient evidence in the record to support it.”). Furthermore, the Ashbys tacitly acknowledged in the District Court that they do not know for certain whether other roads (besides WCL Road) accessed the Tax Parcel in 1934. They offered only that they had “found no evidence” of any other access. Yet, some of the early- and mid-1900s maps included as exhibits to the *84 parties’ motions for summary judgment actually depict a road coming off a public highway and ending at or very near the eastern boundary of the Shaded Parcel. In short, the Ashbys failed to meet their burden of establishing that the Ashby Property in fact became landlocked as a result of the 1934 sale. If anything, their evidence creates genuine issues of material fact. Nevertheless, for purposes of the present discussion only, I will accept as true their premise that the Ashby Property was landlocked following the sale of the Jones Tracts.
¶58 4. In September 1935, Ravalli County transferred the Ashby Property to L. Robert McKenzie. The Ashbys purchased this property in December 2004.[3]
¶59 5. Ravalli County had the power to condemn an easement over the Maechling Property, in favor of the Ashby Property, before it sold the Ashby Property to McKenzie. See §§ 1622, 4478, 9934, RCM (1935). Ravalli County did not exercise this power.
¶60 6. The Ashbys claim an easement by necessity. We have described two types of easement by necessity, one granted and the other reserved:
Where an owner of land conveys a parcel thereof which has no outlet to a highway except over the remaining lands of the grantor or over the land of strangers, a way of necessity exists over the remaining lands of the grantor. Similarly, a way of necessity is found when the owner of lands retains the inner portion conveying to another the balance, across which he must go for exit and access.
Schmid v. McDowell, 199 Mont. 233, 237, 649 P.2d 431, 433 (1982) (alteration, internal quotation marks, and citations omitted). The theory advanced by the Ashbys and adopted by the District Court is that when Ravalli County sold the Jones Tracts to Jones in 1934, it by implication reserved an easement by necessity over the lands thus conveyed for the benefit of the County’s retained lands.
¶61 To establish an easement by necessity, the proponent must show, by clear and convincing evidence, (1) unity of ownership, i.e., prior common ownership of the alleged dominant and servient tenements, *85 and (2) strict necessity for an easement at the time the dominant and servient tenements were severed from common ownership, as well as continuing necessity for an easement. See Graham v. Mack, 216 Mont. 165, 175-76, 699 P.2d 590, 596-97 (1984); Woods v. Houle, 235 Mont. 158, 163, 766 P.2d 250, 253 (1988); Loomis v. Luraski, 2001 MT 223, ¶¶ 49-51, 306 Mont. 478, 36 P.3d 862; see also Gacki v. Bartels, 859 N.E.2d 1178, 1184 (111. App. 2d Dist. 2006) (“It is the burden of the party claiming an easement to show the facts necessary to create an easement by implication. Furthermore, the party claiming the easement must meet this burden of proof by clear and convincing evidence.” (citation omitted)); Griffeth v. Eid, 1998 ND 38, ¶ 6, 573 N.W.2d 829 (“A party seeking an implied easement has the burden of proving the existence of the easement by clear and convincing evidence.”). The common law doctrine of easement by necessity “does not exist to ensure a right of access to any and all landlocked property; rather, the doctrine is properly applied only when the circumstances establish that an access easement was intended at the time of the common owner’s conveyance.” Murphy v. Burch, 205 P.3d 289, 294 (Cal. 2009). “Courts are reluctant to find easements by implication for the reason that such an action results in depriving a person of the use of his property by imposing a servitude by mere implication.” Woods, 235 Mont. at 162, 766 P.2d at 253.
¶62 7. The requirement of strict necessity fails where the retained, landlocked parcel is held by a public entity. “Where a private landowner conveys to another individual a portion of his lands in a certain area and retains the rest, it is presumed at common law that the grantor has reserved an easement to pass over the granted property if such passage is necessary to reach the retained property. These rights-of-way are referred to as ‘easements by necessity.’ ” Leo Sheep Co. v. United States, 440 U.S. 668, 679, 99 S. Ct. 1403, 1409 (1979) (emphasis added). But where the government conveys a portion of its lands, “the easement is not actually a matter of necessity ... because the Government has the power of eminent domain.” Id. at 679-80, 99 S. Ct. at 1410.
Jurisdictions have generally seen eminent domain and easements by necessity as alternative ways to effect the same result. For example, the State of Wyoming no longer recognizes the common-law easement by necessity in cases involving landlocked estates. It provides instead for a procedure whereby the landlocked owner can have an access route condemned on his behalf upon payment of the necessary compensation to the owner of the servient estate. For similar reasons other state courts have held that the
*86 “easement by necessity” doctrine is not available to the sovereign. Id. at 680, 99 S. Ct. at 1410 (footnote omitted); see also Murphy, 205 P.3d at 294 (“In contrast to private party conveyances, however, conveyances involving a sovereign as the common owner typically do not give rise to implied reservations of easements or other property interests in conveyed land,” in part because “strict necessity does not exist in the case of the sovereign as in the case of the private landowner, because the sovereign can exercise the power of eminent domain to obtain any and all reasonable rights-of-way.”).
¶63 This is the law in Montana. See Simonson v. McDonald, 131 Mont. 494, 311 P.2d 982 (1957). Notably, Simonson presents a factual scenario analogous to the case at hand. The Simonsons purchased from the Northern Pacific Railway in 1951 a parcel of land surrounded on three sides by mountains and on the fourth by land the McDonalds had previously purchased from the Northern Pacific Railway in the 1930s. All of this land was chiefly valuable for timber and grazing purposes. The Simonsons contended that their only means of ingress to and egress from their land was across the McDonalds’ land, and they claimed an easement by necessity based on the theory (like the Ashbys’ theory here) that when the Northern Pacific Railway conveyed the land to the McDonalds in the 1930s, it by implication reserved an easement by necessity over the conveyed land. See id. at 495-96, 311 P.2d at 982-83. This Court, however, agreed with the view that “ ‘the law will not imply [a way of necessity] where it has provided another method for obtaining the same at a reasonable expense to the landowner.’ ” Id. at 499, 311 P.2d at 985 (quoting Backhausen v. Mayer, 234 N.W. 904, 905 (Wis. 1931)). The Court noted that the existence of the power of eminent domain “ ‘would seem to negative the strict necessity on which the implication of the reservation of the right of way * * * must be grounded.’ ” Id. at 499, 311 P.2d at 985 (asterisks in Simonson) (quoting State v. Black Bros., 297 S.W. 213, 219 (Tex. 1927)). Thus, the Court held that there is no necessity for an easement where the right of condemnation provides the owner of the landlocked parcel with an “adequate remedy.” See id. at 500-01, 311 P.2d at 985-86.
¶64 Unfortunately, some of the language used by the Court in Simonson was unnecessarily broad in light of the facts of the case and the earlier reasoning in the opinion. Specifically, Justice Angstman wrote: “We conclude therefore that in this state there can be no implied reservations or implied grants of easement by necessity. They may be obtained in eminent domain proceedings if proper showing be made of the necessity therefor.” Id. at 501, 311 P.2d at 985-86. There was no *87 basis for abolishing the easement-by-necessity doctrine outright; and for this reason, the Court subsequently limited Simonson’s holding. In Thisted v. Country Club Tower Corp., 146 Mont. 87, 405 P.2d 432 (1965), the Court found that an “implied equitable servitude” restricting the use of apartments to residential purposes was included in the transfers of the apartments in question. Id. at 103, 405 P.2d at 440. In addition, although it arguably was not essential to this holding (since Simonson dealt with easements, not equitable servitudes), the Court nevertheless took the opportunity to overrule Simonson insofar as Simonson completely abolished easements by necessity and insofar as Simonson precluded the sort of privately held “implied equitable servitudes” recognized in Thisted. See id. at 103, 405 P.2d at 440. But Thisted did not disturb the principle that “strict necessity” fails where the retained, landlocked parcel is held by a public entity with the power to condemn a right-of-way.
¶65 Analysis. Clearly, then, in light of the foregoing undisputed facts and law, there is no way that an easement by necessity over the Maechling Property in favor of the Ashby Property can exist. Such an easement would have arisen, if at all, when these properties were severed from common ownership in July 1934. Yet, the common owner (Ravalli County) had the power to condemn an easement for the benefit of its retained and (supposedly) landlocked parcel. Hence, no “strict necessity” existed and no easement by necessity came into existence. Again, it is important to emphasize that an implied easement by necessity is created, if at all, at the time of severance. Schmid, 199 Mont. at 237-38, 649 P.2d at 433; Big Sky Hidden Village Owners Assn. v. Hidden Village, 276 Mont. 268, 277, 915 P.2d 845, 850 (1996). Contrary to the Ashbys’ contentions, such an easement does not suddenly spring into existence 70 years after the severance because the passage of time, changed circumstances, and other parties make that a more palatable result.
¶66 The Court’s attempts to impugn this analysis are wholly unavailing. First, the Court contends that Leo Sheep is inapposite because “the Ashbys are not a governmental entity with the power of eminent domain.” Opinion, ¶ 25. But this contention plainly misses the point made by the Supreme Court in its discussion of easements by necessity-namely, that where a governmental entity conveys a portion of its lands, an easement by necessity does not arise in favor of a retained landlocked parcel because the government has the power to condemn a right-of-way. See ¶ 62, supra; Leo Sheep, 440 U.S. at 679-80, 99 S. Ct. at 1410. Here, as the Court itself states in ¶ 22, strict necessity must exist “at the time the tracts are severed from the *88 original ownership Obviously, strict necessity did not exist at the time the Ashby Property and the Maechling Property were severed from the original ownership for the simple reason that Ravalli County had the power of eminent domain. Whether the present owner of the Ashby Property has the power of eminent domain is entirely beside the point, given that the requisite strict necessity did not exist at the time the tracts were severed from the original ownership-which, again, the Court states in ¶ 22 is a requirement to establish an easement by necessity.
¶67 Second, the Court notes that Simonson was overruled in part by Thisted. Opinion, ¶ 25 n. 5. As explained above, however, the critical point of Simonson and Thisted (as they are relevant to the present case) is that Thisted did not disturb Simonson’s holding that “strict necessity fails where the retained landlocked parcel is held by a public entity with the power to condemn a right-of-way.
¶68 Based on the foregoing analysis, the Ashbys’ easement-by-necessity claim fails as a matter of law on the undisputed facts they have marshaled in support of it. Strict necessity did not exist at the time of severance, and Maechling and Alcosser were entitled to summary judgment on this basis alone.[4]
¶69 For reasons not explained in the record, Ravalli County failed to condemn an easement before it sold the Ashby Property to McKenzie in 1935. That does not necessarily leave the Ashbys without options, however. For one thing, they could try to purchase for just compensation the easement which, in this litigation, they have demanded for nothing.[5] The Ashbys could also try to acquire an easement through a private condemnation action. See Godfrey v. Pilon, *89 165 Mont. 439, 448, 529 P.2d 1372, 1377 (1974); §§ 70-30-102, -107, MCA. But they are not entitled to summary judgment on their claim of an easement by necessity.
¶70 Indeed, even setting aside the fact that this claim is invalid as a matter of law under the analysis above, the record before us is woefully underdeveloped due to the shoddy pleading, research, briefing, and argument referred to in ¶ 50, supra. For one thing, this Court held in Leisz v. Avista Corp., 2007 MT 347, ¶ 48, 340 Mont. 294, 174 P.3d 481, that “strict necessity” does not exist at the time of severance if “no one was living on the [landlocked property].”[6] Yet, the Ashbys have provided no evidence that someone was living on or using the Ashby Property in 1934. But more significantly, the record fails to answer important questions about alternative routes to the Tax Parcel in 1934, as well as the status and ownership of the remaining tracts in the Tax Parcel and the properties adjacent to the Tax Parcel following the sale to Jones. The Ashbys, therefore, have wholly failed to demonstrate, by clear and convincing evidence, as a purely factual matter, that strict necessity existed at the time of severance. Consequently, even under the Court’s approach, which ignores the eminent domain issue, the District Court’s decision granting summary judgment in favor of the Ashbys should be reversed and this case should be remanded for further development of the record and, if necessary, a trial on the merits.
¶71 That being said, however, I would follow the procedural exception recognized in Leichtfuss. We should resolve this case on the basis of the antecedent and ultimately dispositive issue raised (albeit, belatedly) by Maechling, Alcosser, and Dalton. In so doing, we would preserve the well-established legal principles underlying the doctrine of easement by necessity; we would uphold Meachling’s and Alcosser’s rights to the ownership and enjoyment of their real property free of an implied easement that has no basis in law or fact; and we would avoid publishing, in an important easement case, a decision that is contrary to decades of easement law, that will introduce inconsistency into our easement-by-necessity jurisprudence, and that is grounded in an underdeveloped record characterized by bad lawyering.
*90 ¶72 I would reverse and remand for entry of summary judgment in favor of Maechling, Alcosser, and Dalton on the Ashbys’ claim of an easement by necessity. I dissent from the Court’s failure to do so.

 In this regard, it is only fair to point out that Maechling, Alcosser, and Dalton replaced their first attorney during the litigation in the District Court, after the court had entered summary judgment in favor of the Ashbys establishing the implied easement by necessity. Accordingly, most of the significant damage done to Maechling, Alcosser, and Dalton’s case was under their first attorney and not caused by their current counsel.

 The Court states that this issue should not be considered because it was not raised in the District Court and was noted only “in passing” on appeal. Opinion, ¶ 25. The fact is, however, that the validity of the easement alleged by the Ashbys depends on whether “strict necessity” existed at the time the alleged dominant and servient properties were severed from common ownership. Consequently, whether Ravalli County could reserve an easement by necessity is an antecedent issue which we must address in order to determine the easement’s validity. In my view, the Leichtfuss exception clearly applies on the facts at issue here.

 Notably, the Ashbys’ purchase agreement contains a provision which cautions them: “There is a question of access to the 120 acre parcel. Buyer has been fully informed of such access issue and accepts title to the 120 acre parcel ‘AS IS’....” This provision further states that the seller will cooperate with the Ashbys to address the access issue by, among other things, providing evidence “regarding use of the existing access by Seller and members of the Seller’s family” (emphasis added). This certainly calls into question the Ashbys’ claim that a present necessity exists for an easement to access their property.

 It is highly doubtful that strict necessity exists at the present time either. See Opinion, ¶ 22 (“Strict necessity must exist at the time the [unified] tracts are severed from the original ownership and at the time the easement is exercised.” (citing Watson v. Dundas, 2006 MT 104, ¶ 32, 332 Mont. 164, 136 P.3d 973)). At best, the evidence in the record indicates that genuine issues of material fact exist on this issue. The problem for Maechling, Alcosser, and Dalton, however, is that because of a discovery sanction (resulting from their first attorney’s admitted failure to properly manage the case), they have been saddled with an admission that “[n]o practical access to a public road currently exists from the Ashby Property.” In other words, contrary to the Court’s suggestion that the District Court “reviewed the evidence” on this issue, Opinion, ¶ 23, the fact is that the existence of a present “strict necessity is based solely on a discovery sanction.

 Prior to commencing the instant lawsuit, the Ashbys’ counsel mailed Maechling and Alcosser a letter indicating that the Ashbys intended to log the Ashby Property and offering to purchase an express easement over the Maechling Property for $10.00 — hardly “just compensation.”

 I cannot agree with the Court that this statement in Leisz was “dicta.” Opinion, ¶ 22 n. 4. It was part of our holding; and until the Court expressly overrules it, it is extant law applicable to the question of whether the Ashbys have shown a strict necessity. For that matter, Leisz is consistent with our observation in Godfrey that the term “strict necessity” means “essential to use and enjoyment of the premises as permanently improved at the time of the conveyance of the servient estate.” 165 Mont. at 445, 529 P.2d at 1375 (emphasis added, internal quotation marks omitted).