No. 12681

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

LEE GODFREY and VEGA GODFREY, husband
and wife; MARINER B. BALLARD and GWEN
O. BALLARD, husband and wife; and DICK
NEWTON,

                Plaintiffs and Respondents,

  -vs-

GENE H. PILON and THAIS PILON,

                Defendants and Appellants.

---

Appeal from: District Court of the Fifth Judicial District,
              Honorable Frank E. Blair, Judge presiding.

Counsel of Record:

    For Appellants:

        Schulz and Davis, Dillon, Montana
        Carl M. Davis argued and John Warren appeared,
        Dillon, Montana

    For Respondents:

        Frank M. Davis argued, Dillon, Montana

---

                      Submitted: November 21, 1974

                      Decided: DEC 23 1974

Filed: DEC 23 1974

_Thomas J. Kearney_
                        Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal by defendants, Gene and Thais Pilon, from a judgment of the district court, County of Beaverhead, which quieted title to an easement running across the land of defendants, in the plaintiffs, Lee and Vega Godfrey; Mariner and Gwen Ballard; and Dick Newton.

On July 18, 1972, plaintiffs filed their complaint alleging that defendants had denied plaintiffs' use of a road across defendants' property. Plaintiffs requested and received from the court an injunction pendente lite ordering the Pilons to remove a fence from the road and not to interfere with plaintiffs' use thereof, pending a hearing. Pilons immediately complied with the order and filed a motion to dissolve injunction which was denied by the court. The injunction has since remained in effect. Following a nonjury trial, the court made and entered findings of facts and conclusions of law in favor of plaintiffs and against Pilons. Exceptions to the findings and conclusions were duly filed by Pilons, but refused by the court. Judgment in favor of plaintiffs was entered, from which Pilons now appeal.

The parties to this action own tracts of land in Section 5, T. 5 S., R. 12 W., M.P.M., near Elkhorn Hot Springs and the Rainy Mountain Ski Hill in Beaverhead County, approximately 34 miles west of Dillon. Title to each tract came from a common grantor, John Miller, who, in 1962, commenced a program of subdividing and selling tracts of his land. None of the conveyances involved in this lawsuit contain any grant or reservation of an easement or right of way.

On May 25, 1962, Miller sold a tract of land 100 feet wide by 150 feet deep to H. J. Howard. This tract, which will be referred to here as the Howard tract, was bounded on the west by the National Forest and on the north by a forest service road.

On June 6, 1962, the Pilons, defendants in this action, purchased by warranty deed the fee simple title to a tract of land 100 feet wide by 150 feet deep fronting on the forest service road. Pilons' tract was east of and contiguous to the Howard tract. At the time of deed to the Pilons, Miller owned other land fronting on the forest service road as well as other land south of the tracts conveyed.

Over a year later, on August 27, 1963, Miller sold a third tract of land to Dr. McLaren (hereinafter referred to as the McLaren tract). The McLaren tract was also bounded on the north by the forest service road. It was east of and contiguous to the Pilon tract. An examination of the Pilon deed and the McLaren deed confirms the fact that the Pilons' east line was used as the point of beginning for the west line in the McLaren deed. These boundaries are identical. The McLaren deed merely retraces the metes and bounds of the Pilon deed in order to arrive at a point of beginning for the McLaren tract. It then proceeds with the metes and bounds of the McLaren tract, running south along the line previously established as the east boundary of the Pilon tract. Miller, a layman with regard to civil engineering matters, prepared the metes and bounds descriptions to the various tracts sold, and delivered the descriptions to his attorney for the preparation of the deeds.

In July 1968, Miller sold additional tracts of land to the Godfreys. These tracts were south of the three tracts previously sold. In the summer of 1968, Miller caused a road to be constructed over the land he had sold the Pilons in 1962 in order to provide access to the lands he wished to sell the Godfreys. This road, the subject of this lawsuit, runs generally in a north-south direction over the east edge of the Pilon tract. Prior to 1968, there was no road, trail, path or other way across Pilons'

- 3 -

land. The road was gouged out of a virgin timbered hillside by a bulldozer operated by one Wayne Stocks at Miller's direction and without the Pilons' knowledge or consent. Godfreys testified they were led to believe that access to the lands they purchased was by a road over a strip of land Miller had reserved between the McLaren and Pilon tracts. Godfreys acknowledged that their deeds contained no grant of right of way or easements. They also acknowledged that they had not checked the boundaries nor obtained any plat or survey of the property purchased from Miller, nor had any survey made to determine the location of the road until after the filing of this suit.

There is no claim or finding of an easement by adverse use here, as the five year requirement of section 93-2513, R.C.M. 1947, has not been met. The greatest period of use plaintiffs could claim would be from July 1968 to July 17, 1972, when Pilons fenced the road, or a period of four years.

After its initial construction, the road was widened by Godfrey to its present dimensions of 150 feet in length by 10 to 12 feet in width, again without informing the Pilons or obtaining their consent. The road is within 20 to 25 feet of the Pilons' cabin. Plaintiffs have used the road to drive heavy equipment to their properties, to operate snowmobiles and to drive trail bikes and pickup trucks. All of the parties have cabins on their tracts which they use as second homes.

Sometime prior to the institution of this suit, Gene Pilon advised the Godfreys that the road was on Pilon's land; Godfreys, however, claimed that they had purchased a right of way between the Pilon and McLaren tracts from Miller. Fearing continued use of the road might ripen into a right by adverse use, Pilons obtained a survey of the property which established that the road was on their land and there was, in fact, no space

between the McLaren and Pilon tracts. Gene Pilon testified that, prior to obtaining the survey, he thought it was only partially on his land. Originally, Pilon did not object to the road. He only appeared concerned with its width. He waited almost a year, until after the Godfrey home was built, before even mentioning it to his neighbor. Pilons thereafter presented the Godfreys with a copy of the survey and a license agreement to use the road, revocable on 90 days notice. Godfreys refused to execute the license, maintaining they owned the road. After this, Pilons erected a fence across the disputed roadway so as to physically bar its use by plaintiffs. This action ensued.

The trial judge, in company with counsel, viewed the property. The court concluded:

> " * * * From that inspection it is quite clear that there was no other practical access to the properties held in reserve by the common land owner at the time he executed defendants' deed * * *. There being no other access upon which an entrance could be built to provide entrance to the land held in reserve by Mr. Miller, 'necessity' clearly appears.
>
> " * * *
>
> "The most impressive evidence was apparent on the Court's visit to the properties out of which this lawsuit arose. A mountain side, heavily timbered, is the setting for the controversy. No other access seems reasonably possible to plaintiffs' land."

The district court, in attempting to resolve this dispute, found that John Miller reserved an easement of right of way over and upon the Pilon property. The court further concluded that even if John Miller did not in fact reserve the right of way easement in question, that plaintiffs are entitled to the right of way "on the equitable principles of necessity, estoppel and easement by implication".

On appeal three issues are presented: (1) Whether the evidence supports the district court's holding that Miller did in fact reserve an easement over the Pilon property for access

- 5 -

to the remainder of the property he owned?  (2) Whether the evidence supports the district court's holding that there was an implied reserved easement of necessity over the Pilon property for access to the remainder of the property Miller owned?  (3) Whether plaintiffs are entitled to an easement on the equitable principle of estoppel?

We find there is a total lack of evidence to support the district court's holding that Miller did in fact reserve an easement over the Pilon property when he sold it to them in 1962.  To support this holding, plaintiffs rely on this finding of the district court:

> " * * * that at about the time Miller conveyed the parcels to Pilon and McLaren, he placed a marker, an MJB Coffee Can, at a point marked 'Z' on the attached plat, [approximately 15 feet west of the Pilons' east boundary line, on the edge of the Forest Service Road], and the Court finds that the grantor Miller intended for this marker to indicate a reserved right of way over and upon which he thereafter constructed the road for access to the property he had reserved. That this MJB Coffee Can marker was in place from the date of the Miller conveyance to defendants Pilon, was seen and acknowledged by all parties to this action but which disappeared on or about July 12, 1972."  (Bracketed material added).

There is absolutely no evidence of the coffee can or any other marker at the time Miller sold to either McLaren or Pilon.  Mrs. Godfrey testified it had "been there ever since the first time we were ever up there" and that "Jack always told us that this was the end of the Pilon property and that was where the road would go in when we bought it, that's where he showed us the road would go in that way."  The evidence does not show that the coffee can was on the Pilons' land any earlier than 1968.  This certainly does not support the intention to reserve a right of way across ground sold to the Pilons in 1962.

The only other evidence having any bearing whatsoever on

- 6 -

whether Miller reserved an easement across Pilons' land was the testimony of plaintiffs to the effect that "Jack [Miller] said there was no problem because he had reserved a space between McLaren and Pilon for the road" and, it was their "impression" or "understanding" that they had a right of way into their land. Plaintiffs entire argument on the subject of an express reserved easement appears to be that Miller must have reserved an easement since his failure to do so would have forever deprived him of access to his retained property. The conclusion does not necessarily follow.

Neither do we find any evidence to support the district court's holding that there was an implied reserved easement of necessity over the Pilon property for access to the remainder of the property Miller owned. In Pioneer Min. Co. v. Bannack Gold Min. Co., 60 Mont. 254, 263, 264, 198 P. 748, this Court said:

> " * * * The parties are presumed to contract with reference to the condition of the property at the time of the sale, provided the marks are open and visible. [Citing cases].
>
> " * * *
>
> "'In a sense no easement or quasi easement can well be absolutely necessary to any possible enjoyment of property. The most that can be required is that it be, in addition to being apparent and continuous, essential to use and enjoyment of the premises as permanently improved at the time of the conveyance of the servient estate. And this appears to be what is meant by the term "strict necessity," in defining easement reserved by implication.' (19 C.J. 920, note 75, Div.A.)
>
> " * * *
>
> "An easement is apparent when it may be discovered upon reasonable inspection." (Emphasis supplied).

Although there may have been "necessity" for the easement, in the sense that Miller may have been effectively landlocked from the land which he retained (a point which we will discuss later), there is absolutely no evidence in the record that there was any apparent easement, path, "roadway of sorts", trail or

"primative road" over the land sold to the Pilons until the sale to the Godfreys in 1968, more than six years after Pilons purchased their tract.

All of the land was unimproved, timbered hillside and the witnesses all agreed and testified that the first visible sign of a roadway over the area of the claimed easement was in the summer of 1968. The trial court stated in its opinion:

> "There was a roadway of sorts, on the easement ground described in the Court's findings, at the time the Pilon family purchased the same."

The only conceivable support for this statement would be the trial judge's view of the properties. However, if this was the case, we are unable to accept the district court's flat assertion without some explanation of how he was able to observe this "roadway of sorts" or "primative road" after a road 10 to 12 feet wide had been gouged out of the hillside by a bulldozer in 1968.

The requirement that the implied reserved easement of necessity must be open and visible at the time of the conveyance is further supported by Montan's statute, section 67-1607, R.C.M. 1947:

> "A transfer of real property passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the person whose estate is transferred in the same manner and <u>to the same extent as such property was obviously and permanently used</u> by the person whose estate is transferred, for the benefit thereof, at the time when the transfer was agreed upon or completed." (Emphasis supplied).

In Spaeth v. Emmett, 142 Mont. 231,237, 383 P.2d 812, we applied the rules of that section to a situation where the servient tenement was conveyed creating an implied easement by reservation. See also 28 C.J.S., Easements, § 33(b), p. 693.

Plaintiffs testified repeatedly that the road in question was "the only access" and "the only possible way" into plaintiffs'

properties. The trial judge viewed the land and stated in his opinion:

> "From that inspection it is quite clear that there was no other practical access to the properties held in reserve by the common land owner at the time he executed defendants' deed".

We would be willing to accept that finding of "necessity" (in the sense that Miller may have been effectively landlocked from the land which he retained) except for this:  At the time Miller conveyed the Pilon tract to the Pilons, he retained the land to the east which later became the McLaren tract.  As we previously stated, quoting from Pioneer Min. Co., the "necessity" must appear "at the time of the conveyance of the servient estate". The east boundary of the Pilon tract is identical with the west boundary of what later became the McLaren tract.  The road in question is located adjacent to the boundary, on the Pilon side of the line.  There is nothing in the transcript or in the judge's reporting of his view to indicate why it would be "necessary" at the time of the conveyance to Pilon, to put the road on the Pilon side of the line rather than 10 to 12 feet east on the other side of the boundary.  From the photographs introduced, the terrain 10 to 12 feet east appears similar to the terrain upon which the road is built.

Because plaintiffs contend and the district court found that an easement had been created by estoppel, we have attempted to set forth as many of the relevant facts bearing on this incident as possible.  Suffice it to say that we do not find any evidence to support the district court's holding that plaintiffs are entitled to an easement on the equitable grounds of estoppel. The road was originally constructed and subsequently enlarged all without the knowledge or consent of the Pilons.  The most that can be said against the Pilons is that they passively acquiesced for a period of four years, thinking

- 9 -

only that the road might be on their land, until they discovered their rights and acted to prevent an easement by prescription from arising. There was no misrepresentation by the Pilons to the plaintiffs, nor any detrimental reliance on the part of the plaintiffs, which are necessary for a finding of estoppel. Lindblom v. Employers' Liability Assurance Corp., 88 Mont. 488, 295 P. 1007.

In their complaint, plaintiffs requested, in the alternative, relief under the provisions of sections 93-9923 and 32-1401, R.C.M. 1947, for the private condemnation of a right of way by necessity. The district court indicated at the hearing on the injunction pendente lite that if he held in favor of the plaintiffs as to their ownership of the easement, there would be no need to make a ruling on the condemnation cause of action. As a result, no ruling was made by the district court in this regard. Nothing we have said here precludes plaintiffs from proceeding with a private condemnation action.

Pilons' answer included a counterclaim to quiet title to the access road in themselves. Finding plaintiffs' claims to the access road to be without merit, title to the access road is quieted in the Pilons. Pilons are not entitled to damages since their prayer for damages only had relation to the condemnation action and such issue has not been resolved. Pilons have asked for and are entitled to costs and attorney fees pursuant to section 93-4213, R.C.M. 1947, and our decision in Electric Co-op., Inc. v. Ferguson, 124 Mont. 543, 551, 227 P.2d 597.

The judgment of the district court is reversed and the matter is returned to the district court for the fixing of reasonable attorney fees.

_Wesley Castles_
_____
Justice

We concur:

_____
Chief Justice

_____

_____

Justices