FILED

April 15 2010

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 09-0115

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 80

_____

PERRY ASHBY and KATHERINE ASHBY,

      Plaintiffs and Appellants,

   v.

PHILLIP MAECHLING, SANDRA ALCOSSER,
and HARVE L. DALTON,

      Defendants, Appellees and Cross-Appellants.

_____

APPEAL FROM:    District Court of the Twenty-First Judicial District,
                     In and For the County of Ravalli, Cause No. DV 05-384
                     Honorable James A. Haynes, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Darrel L. Moss (argued); Moss & Associates, P.C., Missoula, Montana

                William K. VanCanagan; Datsopoulos, MacDonald & Lind, P.C.,
                Missoula, Montana

        For Appellees and Cross-Appellants:

                Martin S. King (argued); Worden Thane, P.C., Missoula, Montana

_____

                     Argued and Submitted:  January 20, 2010

                                 Decided:  April 15, 2010

Filed:

              _____
                             Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    This case arises from a dispute in which the Ashbys seek an easement by necessity across properties owned by Maechling, Alcosser and Dalton (referred to collectively as Maechlings).  The District Court of the Twenty-First Judicial District held that Ashbys had an easement by necessity and defined the scope of the easement.  Both sides appeal and we affirm.

¶2    Ashbys present issues for review that we restate as follows:

¶3    Issue One:  Whether the District Court erred in determining the scope of the easement.

¶4    Issue Two:  Whether the District Court erred in failing to award Ashbys damages based upon a claim of interference with the easement.

¶5    Maechlings present issues for review that we restate as follows:

¶6    Issue Three:  Whether the District Court erred in declaring that an implied easement by necessity exists across property of Maechlings to reach property owned by Ashbys.

¶7    Issue Four:  Whether the District Court erred in determining that West County Line Road is a public road.

¶8    Issue Five:  Whether the District Court erred in determining that the easement by necessity allows access to Ashbys' property for one residence.  We deem this to be related to the scope of the easement.

## PROCEDURAL AND FACTUAL BACKGROUND

2

¶9 The property at issue is west of U.S. Highway 93 in northern Ravalli County, Montana, and is bordered on the north by Missoula County. In 1932 Ravalli County acquired tax deed title to a large tract of land that included all of the property now owned by the parties. At that time the West County Line Road, which runs east-west along the Ravalli-Missoula County line, entered the east end of the large Ravalli County tract and provided access to it. In 1934 the County sold to George Jones the property now owned by Maechlings. The County retained the property now owned by Ashbys and sold it to Robert McKenzie in 1935.[1] The Ashbys' tract is 120 acres and lies to the west of Maechlings' property. Maechling and Alcosser own and reside on 30 acres immediately east of Ashbys' land, and Dalton owns and resides on a tract immediately east of Maechling and Alcosser.

¶10 No established roads have ever entered the Ashbys' property and no permanent residence or agricultural use was ever established there. There is an irrigation ditch that crosses the parcel, but it has not been developed other than three episodes of logging, one in the 1800s, another in the 1970s and another conducted by Ashbys in 2007.

¶11 Ashbys bought their property in late 2004 along with a separate 150 acre parcel from the same seller. They knew at the time of purchase that there was no established access to the property and that their title insurance policy excepted access. Maechlings had for some time prior to 2004 maintained a locked gate on their property at the end of West County Line Road. The Road did not and apparently never has extended to the

---

[1] The County-owned parcel, referred to as the "tax deed" property encompassed the land now owned by all the parties on its northern end, along with other property to the south now owned by third parties.

property now owned by Ashbys. In 2005 Ashbys wrote Maechling and Alcosser claiming an easement by necessity across their land for purposes of logging and offering not to sue them if Maechling and Alcosser sold Ashbys a perpetual non-exclusive easement for $10. Maechlings declined the offer, and this event precipitated Ashbys' claim for interference with the easement.

¶12 Ashbys sued in July 2005 seeking to establish that they had an easement by necessity across Maechlings' property to reach their 120-acre parcel, and for damages based upon Maechlings' alleged interference with the claimed easement. In February, 2006 Ashbys moved for summary judgment on the easement issue. In October, 2006 the District Court denied Ashbys' motion on the ground that they had not met their burden to show by clear and convincing evidence that the easement by necessity existed.

¶13 In March, 2007 Ashbys again moved for summary judgment, and in June Maechlings also moved for summary judgment. On August 31, 2007 the District Court denied Maechlings' motion for summary judgment and granted summary judgment to Ashbys, holding that West County Line Road is a public road, and that Ashbys have an easement by necessity across Maechlings' land to reach the road. Immediately after the District Court ruling, Ashbys arrived on Maechlings' land at the end of West County Line Road, removed the locked gate and constructed a road to their property across Maechlings' property. Maechlings have not blocked the access since the August 31, 2007, District Court ruling.

¶14 In March, 2008, Ashbys moved for partial summary judgment on the issue of the scope of the easement, requesting that the "Court determine, as a matter of law, that the

4

scope of the easement that arose in 1934 is unlimited other than that such use must be in accordance with laws that govern the normal use and development of real property in Ravalli County and the State of Montana."[2] Maechlings also moved for reconsideration of the August 31, 2007 order regarding the existence of an easement by necessity.

¶15 In July, 2008, the District Court denied Maechlings' motion for reconsideration, denied Ashbys' motion on the scope of the easement and granted summary judgment for Maechlings and against Ashbys on the claim for interference with the easement. The District Court then held an evidentiary hearing in September, 2008 on the scope of the easement. Witnesses testified and exhibits were received.

¶16 The District Court entered Findings of Fact, Conclusions of Law and Judgment in November, 2008, and amended findings in January, 2009.

**STANDARDS OF REVIEW**

¶17 This Court reviews a district court's decision on a motion for summary judgment de novo, using the same standards provided in M. R. Civ. P. 56. *Spinler v. Allen*, 1999 MT 160, ¶ 14, 295 Mont. 139, 983 P.2d 348.

¶18 A district court's findings of fact will be upheld if they are supported by substantial credible evidence. *Steiger v. Brown*, 2007 MT 29, ¶ 16, 336 Mont. 29, 152

---

[2] Ashbys did not disclose any plans to use the property, and in fact have stated that they have no short-term plans or specific plans to use it other than for the logging completed in 2007 and for incidental maintenance and upkeep of the existing irrigation ditch that crosses the land. When asked at a hearing before the District Court why he needed access to the property, Mr. Ashby stated: "Because we were granted the right to gain access by this Court, is my understanding." At the same time, Ashbys have contended that their use of the land is limited only by applicable law and that the easement should be equally broad.

5

P.3d 705. This Court reviews a district court's conclusions of law to determine whether they are correct. *Id.*

## DISCUSSION

¶19 We first consider the pivotal issue of whether the District Court properly held that an easement by necessity exists across Maechlings' land to access the Ashby land. Montana law has long recognized the existence of easements by necessity as a species of implied easements. At the same time, easements by necessity are "considered with *extreme* caution" because they deprive the servient tenement owner of property rights "through *mere* implication." *Graham v. Mack*, 216 Mont. 165, 174, 699 P.2d 590, 596 (1984) (emphasis in original). Easements by necessity arise from a legal fiction that the owner of a tract of land would not isolate a portion of it without having intended to leave a way of access to the parcel over the lands being severed. *Wolf v. Owens*, 2007 MT 302, ¶ 16, 340 Mont. 74, 172 P.3d 124. Two essential elements of an easement by necessity are unity of ownership and strict necessity. *Watson v. Dundas*, 2006 MT 104, ¶ 32, 332 Mont. 164, 136 P.3d 973. The proponent of the easement by necessity must prove the necessary elements by clear and convincing evidence. *Watson*, ¶¶ 33, 40-41.

¶20 Unity of ownership exists where the owner of a tract of land severs part of the tract without providing an outlet to a public road. *Watson*, ¶¶ 32, 33. A single owner must at one time have owned both the tract to be benefited by the easement and the tract across which the easement would pass. *Loomis v. Luraski*, 2001 MT 223, ¶ 49, 306 Mont. 478, 36 P.3d 862. Unity of ownership can originate decades before the judicial determination of whether there is an easement by necessity. *Kelly v. Burlington Northern,* 279 Mont.

6

238, 244-45, 927 P.2d 4, 7-8 (1996) (unity of ownership traced to 1891). The easement by necessity is created by operation of law at the time of severance of the parcels of land. *Albert G. Hoyem Trust v. Galt*, 1998 MT 300, ¶ 17, 292 Mont. 56, 968 P.2d 1135.

¶21  In this case it is undisputed that in 1932 Ravalli County owned a tract of land referred to as the tax deed parcel that included the land now owned by all parties to this litigation. It is also undisputed that in 1934 the County severed parts of the larger tract to Maechlings' predecessors in interest and then to Ashbys' predecessors in interest. Therefore, the unity of ownership requirement was clearly met.

¶22  The element of strict necessity requires that there is no practical access to a public road from the landlocked parcel. *Kelly*, 279 Mont. at 244, 927 P.2d at 7. Strict necessity must exist at the time the tracts are severed from the original ownership *and* at the time the easement is exercised. *Watson*, ¶ 32.[3] A developed way of access to the landlocked parcel need not actually exist at the time of severance, and an easement by necessity is "distinguished from other implied easements on the simple ground that [a developed way] need not be in existence at the time of conveyance . . . ." *Schmid v. McDowell*, 199 Mont. 233, 237, 649 P.2d 431, 433 (1982).[4]

---

[3] Maechlings contend that a prior easement agreement among predecessors to the parties provided access to the Ashby parcel and therefore extinguished the easement by necessity. However, there is no evidence that the easement agreement was still in effect and useable at the time Ashbys asserted the right to an easement by necessity.

[4] Maechlings argue that under *Leisz v. Avista Corp.*, 2007 MT 347, ¶ 48, 340 Mont. 294, 174 P.3d 481, the proponent of an easement by necessity must demonstrate an actual use of the landlocked property, such as a residence, at the time of severance. The language they rely on in *Leisz*, ¶ 48 was not necessary to the decision in that case and is therefore dicta. In addition, there is no indication in the *Leisz* opinion that the Court intended to overrule any prior law on easements by necessity or intended to add any new requirements to be met by the proponent of an easement. Nothing in *Leisz*, should be

¶23 In this case the District Court concluded upon a review of the evidence that there was no evidence of any practical road to connect Ashbys' parcel to a public road. Severance of the parcel now owned by Maechlings' landlocked the parcel now owned by Ashbys. No substantial evidence appears to contradict that conclusion.

¶24 Maechlings contend that the District Court should have found that quiet title actions brought in 1971 and 2001 extinguished any easement by necessity to serve the Ashby tract. The District Court considered but rejected the contention that the decrees in those two actions extinguished the easement by necessity, finding that while the predecessors to the Ashbys were well known, they were not made parties to the actions. The District Court further found that service by publication upon "all unknown persons" was not effective to bind known individuals who can be identified with reasonable diligence. *Baertsch v. Lewis & Clark County*, 256 Mont. 114, 125, 845 P.2d 106, 113 (1992). The District Court therefore properly decided that the prior quiet title actions did not bar the easement.

¶25 The dissent argues that Ashbys failed to demonstrate strict necessity because Ravalli County, as the predecessor owner of the relevant parcels, had the power to condemn an easement across the servient property to provide access to a public road. First, this issue should not be considered because, as the dissent acknowledges, it was not raised in the District Court and was noted only in passing on appeal. Second, the primary authority for the condemnation rule is *Leo Sheep Co. v. U.S.*, 440 U.S. 668, 99 S. Ct. 1403 (1979). *Leo Sheep* arose out of the checkerboard land ownership that resulted from

applied to require that the proponent of an easement by necessity must demonstrate actual use of the land at the time the tract was severed from common ownership.

grants of alternate sections of Federal land to the Union Pacific Railroad in the 1860s. The United States argued that it had an easement by necessity across lands formerly granted to the Union Pacific but now owned by Leo Sheep Co. to reach a recreation area on Federal land. The Supreme Court held that because the United States could condemn a right of way it could not demonstrate the strict necessity required to secure an easement. Since the Ashbys are not a governmental entity with the power of eminent domain, the *Leo Sheep* case does not resolve the present dispute.[5]

¶26 Therefore, since there was clear and convincing evidence of both unity of ownership and strict necessity, the District Court properly concluded that an easement by necessity existed to provide access to the Ashby tract.

¶27 The second issue we consider is whether the District Court properly concluded that the West County Line Road is a public road. An easement by necessity exists, if at all, to connect the landlocked tract of land to a public road. *Watson*, ¶ 32.

¶28 Maechlings contended that the West County Line Road is not a public road and therefore an easement by necessity could not be implied to provide access to it. The District Court received and carefully considered substantial historical evidence as to the nature of the West County Line Road. Based upon this evidence the District Court granted summary judgment to Ashbys, concluding that Ravalli County had declared the

---

[5] The dissent also cites *Simonson v. McDonald*, 131 Mont. 494, 311 P.2d 982 (1957), for the proposition that there is no strict necessity where the right of condemnation provides the owner of a landlocked parcel the right to acquire access. *Simonson* also completely abolished easements by necessity, and was subsequently overruled by *Thisted v. Country Club Tower Corp.*, 146 Mont. 87, 405 P.2d 432 (1965), which was then overruled on other grounds by *Gray v. Billings*, 213 Mont. 6, 689 P.2d 268 (1984). We find no basis in this scenario to resurrect a part of the *Simonson* opinion.

Road to be a public highway in 1894, and that the Road was already opened at that time with the exception of a one-half mile section. The District Court also concluded that the Road terminated at the northwest corner of Section 3, on land now owned by Maechlings, but not extending to the land now owned by Ashbys.

¶29 Maechlings contended in District Court that the West County Line Road was never properly adopted as a public way. The District Court properly concluded that the Road is a public way and has been since 1894, relying on decisions from this Court recognizing the difficulty of reconstructing the detailed history of county roads created as much as 100 years ago. In *Reid v. Park County*, 192 Mont. 231, 236, 627 P.2d 1210, 1213 (1981), this Court adopted "the rule that it is sufficient if the [county] record taken as a whole shows that a public road was created. Otherwise the burden on the public in a particular case to prove a public road was created so many years ago may well be insurmountable." Requiring production of documentary evidence of events that occurred long ago can be impracticable, *Powell County v. 5 Rockin' MS Angus Ranch*, 2004 MT 337, ¶ 25, 324 Mont. 204, 102 P.3d 1210, and there is a disputable presumption that official duty has been regularly performed. Section 26-1-602(5), MCA. Discrepancies in the description or location of a road in old county documents are not sufficient to turn a county road into private property. *Powell County*, ¶ 27.

¶30 Here, the fact that the full length of the road was not opened in 1894 does not alter its status as a county road. *Bolinger v. Bozeman*, 158 Mont. 507, 509, 493 P.2d 1062, 1063 (1972). Mere non-use, even for extended periods of time, is generally insufficient

alone to indicate an intent to abandon a public way. *Baertsch*, 256 Mont. at 122, 845 P.2d at 111.

¶31 The record in this case, as explained in detail by the District Court's orders, sufficiently established that Ravalli County created and dedicated the West County Line Road as a public road. The District Court was correct in concluding that there were no material facts concerning whether the Road was created and that summary judgment on that issue was appropriate.

¶32 We next consider the issue of the scope of Ashbys' easement by necessity. Both sides appeal from the District Court's determination of the scope of the easement. Ashbys contend that the easement should be broader, while Maechlings contend that it is too broad.

¶33 The issue arose in the District Court upon Ashbys' motion for partial summary judgment in support of their contention that the scope of the easement is unlimited as long as it serves some use of the property and that use complies with applicable law. Ashbys have not specified any use they contemplate for their land, and in fact disclaim any plans for using it. They similarly did not specify the parameters of the easement by necessity, other than asserting that it must be sufficient to allow them to make any lawful use of the property.

¶34 After conducting an evidentiary hearing and after extensive review of the facts and law, the District Court concluded that the scope of the Ashby easement

> is approximately 12-15 feet wide, as it currently exists, for one single-family residential, non-commercial use by owners of the Plaintiffs' Property, their lawful successors and assigns, including recreational access to wildlands on Plaintiffs' property and for irrigation system inspection,

11

repair, maintenance and use, and use by Plaintiffs related to forest thinning and logging consistent with reasonable and responsible forest practices and for no other. All other uses or use by persons other than lawful owners, successors or assigns of Plaintiffs' property shall exceed the scope of this easement and is prohibited. This easement by necessity shall automatically terminate if and when other legal alternate easement access is obtained to Plaintiffs' Property.

¶35 Ashbys contend that the scope of their easement must be unlimited in order to serve any use they can lawfully make of the property. Maechlings contend that the easement as decreed is too broad in that it allows use for residential purposes and there has never been a residence on the Ashby property.

¶36 The law in Montana on the scope of an implied easement by necessity begins with *Herrin v. Sieben*, 46 Mont. 226, 127 P. 323 (1912), one of the first Montana cases on the subject. In that case this Court held that easements by necessity cannot be used "at will," but must be exercised with "due regard to the rights of both parties" so that the use "does not encroach upon the land of his grantor further than circumstances render it necessary." *Sieben*, 46 Mont. at 235, 127 P. at 328. The District Court held that the *Sieben* case stands for the "clear expectation that the dominant estate's access needs will be balanced with the servient estate's interests, and restricted in that such access cannot lawfully encroach upon the servient estate more than the circumstances rendered necessary."

¶37 This is a reasoned and appropriate statement of the basic scope of an easement by necessity. If such easements were unlimited, the property rights and property values of the servient estate owner could be materially impacted by a right of easement that in the final analysis arises only from a legal fiction. The property rights of the servient estate owner merit more protection under Montana law than would be the case if easements by

necessity were unlimited. Those authorities that allow easements by necessity to be expanded to fit any lawful use imagined by the dominant estate owner fail to give sufficient consideration to the rights of the servient estate owner, which are no less important. *See e.g. Morrell v. Rice*, 622 A.2d 1156 (Me. 1993). Implied negative easements are viewed with "extreme caution" since the servient landowner loses the use and control of some portion of his property. *Graham*, 216 Mont. at 174, 699 P.2d at 596. This extreme caution should be observed both in determining whether an easement by necessity exists and, if so, in determining its scope.

¶38 The District Court also relied upon language in *Tungsten Holdings v. Kimberlin*, 2000 MT 24, 298 Mont. 176, 994 P.2d 1114, as to the scope of implied easements. *Tungsten* did not involve an easement by necessity, but this Court endorsed the concept that a decision on the scope of an implied easement should consider "the actual uses being made [of the dominant estate] at the time of the severance, such uses as the facts and circumstances show were within the reasonable contemplation of the parties at the time of the conveyance, and such uses as the parties might reasonably have expected from future uses of the dominant tenement." *Tungsten*, ¶ 27. Such evidence may be scarce in the case of an easement by necessity when, as in the present case, the severance occurred decades before issues arose as to the use of the easement. Nonetheless, if such evidence is available, it should be considered in determining the scope of an easement by necessity.

¶39 Here, there is no evidence of the actual contemplation of Ravalli County or its purchasers as to the present and future use of the property in 1934. The County acquired

13

the land in a Depression-era tax foreclosure but was able to sell portions of it and return it to the tax rolls a few years later. There is no evidence that the County ever used the property and it is therefore likely that the County's interest and expectation at the time was to realize tax income from the tract. There is evidence that the Ashby land was at that time forested wildland with no established public vehicular access route. The evidence also shows that the Ashby land had been logged in the late 19th century but otherwise had been used, if at all, for wildland recreational purposes. Similarly, the evidence is that at the time of severance the area surrounding the County tax parcel was rural, forested, agricultural and the site of scattered rural residential dwellings.

¶40    Therefore, nothing in the history or condition of the property at the time of severance would support a finding that the extent of the implied easement by necessity across the land of the servient estates should be unlimited.

¶41    The District Court also properly considered that an easement by necessity, while not unlimited in scope, is not limited to the precise uses and prevailing technology at the time of severance. So, if the severance occurred at a time prior to the general use of motor vehicles and electric power, an easement by necessity may still allow for "reasonable technological developments" as long as the use does not cause unreasonable damage or interference with the rights of the servient estate owner. *See e.g. Schumacher v. Department of Natural Resources*, 663 N.W.2d 921, 924 (Mich. App. 2003). Thus, modern vehicle access and utility services may be allowed as part of an easement by necessity even though the easement arose as a legal matter before the general use of such improvements.

¶42 The District Court here properly recognized these principles and allowed for non-commercial recreational and residential vehicular access by road to the Ashby property. The District Court expressly did not address gates, cattle guards, underground or other utility transmission lines, because "[a]lthough invited to do so by the Court, neither party" addressed those issues.

¶43 Ashbys did not provide evidence upon which the District Court might have fashioned different parameters for the easement by necessity. They disclaimed having any specific plans, uses or needs for the property and only asserted that they had the right to do anything that the law allowed and that the easement must accommodate their future decisions, whatever they might be. By that reasoning, such disparate uses as a cattle feed lot, a gravel mine, a dirt track motorcycle racing venue or a high-density subdivision all might be legally permissible on the Ashby tract. It is not reasonable to impose such potential unknown and unlimited burdens on Maechlings' property.

¶44 The District Court properly considered the current nature of the area in which the property is located in northern Ravalli County. The area surrounding the Ashby tract is mixed. To the immediate west is Forest Service land. The area is largely rural with scattered, low-intensity residential uses on larger lots or acreage. The District Court's decision to allow one single-family residence on the Ashby property, to be served by the easement, is a reasonable reflection of land use as it has developed in the area. The District Court reached a reasoned and proper decision on the scope of the easement by necessity.

¶45 We next consider Ashbys' claim that the District Court erred in not awarding them damages for Maechlings' interference with the easement. Ashbys claim that they are entitled to damages of over $100,000 because Maechlings' rejection of the $10 perpetual easement in 2005 caused them to have to acquire a temporary easement from a third party to conduct the logging on the property in 2007. The District Court granted summary judgment against Ashbys on this claim.

¶46 The District Court noted that prior to its ruling in August, 2007, holding that the easement by necessity existed, Ashbys' motion for summary judgment on the existence of the easement had been denied. Further, after August 31, 2007 Ashbys used the easement without interference from Maechlings.

¶47 While the essential acts that gave rise to the easement by necessity arose in the 1930s, Ashbys' right to the easement was not established until August 31, 2007. Prior to that time Maechlings could not have wrongfully interfered with Ashbys' easement. *Stokes v. State*, 2007 MT 169, ¶ 10, 338 Mont. 165, 162 P.3d 865. We therefore affirm the District Court's determination that Ashbys did not have a claim against Maechlings for interference with the easement by necessity.

¶48 The District Court's orders appealed from are affirmed.


/S/ MIKE McGRATH


We concur:

/S/ PATRICIA O. COTTER
/S/ MICHAEL E WHEAT

16

/S/ BRIAN MORRIS

Justice W. William Leaphart, specially concurring.

¶49     I specially concur in the result but express no opinion on the issue of whether, as of the time of severance, the common ownership by a governmental entity with powers of condemnation defeats any claim of "strict necessity." This issue was not raised below and, on appeal, was only referenced once in a footnote in a reply brief. Accordingly, I would defer addressing the issue until it is properly raised and adequately briefed.

/S/ W. WILLIAM LEAPHART

Justice Jim Rice joins in the specially concurring opinion of Justice Leaphart.

/S/ JIM RICE

Justice James C. Nelson, dissenting.

¶50     "Few things are as certain as death, taxes and the legal entanglement that follows a sale of landlocked real estate." *Bob Daniels and Sons v. Weaver*, 681 P.2d 1010, 1013

(Idaho App. 1984). This entanglement is made all the worse when the litigation is poorly pleaded, poorly researched, poorly briefed, and poorly argued—as unfortunately is the case here.[1] Nevertheless, it is apparent on the face of the record that the easement by necessity claimed by the Ashbys does not exist for the simple reason that at the time the alleged dominant tenement (the Ashbys' property) and the alleged servient tenement (Maechling and Alcosser's property) were severed from common ownership, they were held by a public entity (Ravalli County) which had the power to condemn a right-of-way, and thus there was no "strict necessity" for an easement.

¶51 At the outset, I note that Maechling and Alcosser's current counsel made this exact point during oral argument and in the Appellees' Cross Appeal Reply Brief on appeal. The problem is that neither he nor his predecessor argued this specific legal theory in the District Court, and "[t]he general rule in Montana is that this Court will not address either an issue raised for the first time on appeal or a party's change in legal theory." *Unified Indus., Inc. v. Easley*, 1998 MT 145, ¶ 15, 289 Mont. 255, 961 P.2d 100.

¶52 There is an important exception to this general rule, however—one which applies in the present case. In *Leichtfuss v. Dabney*, 2005 MT 271, 329 Mont. 129, 122 P.3d 1220, the parties were arguing over whether Dabney's use of the easement in question constituted an increased burden on Leichtfuss's servient property. But both parties largely ignored the antecedent issue of whether the easement, which had been established

---

[1] In this regard, it is only fair to point out that Maechling, Alcosser, and Dalton replaced their first attorney during the litigation in the District Court, after the court had entered summary judgment in favor of the Ashbys establishing the implied easement by necessity. Accordingly, most of the significant damage done to Maechling, Alcosser, and Dalton's case was under their first attorney and not caused by their current counsel.

through prescriptive use by the holder of a life estate, survived the termination of that life estate. At best, the briefing on this issue was "not particularly artful" and the parties' arguments were "underdeveloped." *Leichtfuss*, ¶ 37 n. 8. Yet, although under these circumstances we might otherwise have declined to address the issue, we observed that

> "a court may consider an issue 'antecedent to . . . and ultimately dispositive of' the dispute before it, even an issue the parties fail to identify and brief." *United States Nat. Bank of Ore. v. Independent Ins. Agents of America, Inc.* (1993), 508 U.S. 439, 447, 113 S.Ct. 2173, 2178. Similarly, "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *United States Nat. Bank of Ore.*, 508 U.S. at 446, 113 S.Ct. at 2178 (internal quotation marks omitted) (alteration in original). Indeed, as we have previously recognized, " ' * * * If the court were limited to the arguments and reasoning of counsel in its decisions of cases, to the exclusion of its own observations, many cases would lead us far from what we understand to be the true object of the court.' " *Kudrna v. Comet Corp.* (1977), 175 Mont. 29, 51, 572 P.2d 183, 195. Moreover, if the boundaries of our opinions were circumscribed by the inadequacies of the briefs submitted on appeal, then in many cases we would be issuing opinions that set bad precedent and confuse, rather than clarify, the law.

*Leichtfuss*, ¶ 37 n. 8 (ellipsis, asterisks, and brackets in original). In light of these principles, we held that "it is appropriate for us to address the issue [related to the termination of the life estate] since it is an integral step in our analysis." *Leichtfuss*, ¶ 37 n. 8; *see also e.g. Confederated Salish and Kootenai Tribes v. Clinch*, 2007 MT 63, ¶ 14, 336 Mont. 302, 158 P.3d 377 ("Though not squarely addressed by the parties, we must address this issue of tribal sovereignty . . . as a necessary predicate to deciding whether change of use proceedings of this type are permissible under Montana law." (citing *Leichtfuss*, ¶ 37 n. 8)).

¶53 In the present case, the issue of whether the alleged easement by necessity exists was squarely presented to the District Court and has been squarely presented to this Court. And the same is true of the more specific question of whether "strict necessity" existed at the time of severance. In this regard, Maechling and Alcosser have always maintained that there was no "strict necessity" for an easement over what is now their property. While the specific theory that Ravalli County lacked "strict necessity" because it had the power to condemn an easement was raised belatedly, addressing this issue is an integral step in our analysis and is ultimately dispositive of the dispute before us. Indeed, as discussed below, the law fully supports Maechling and Alcosser on this point. Thus, we "set bad precedent and confuse, rather than clarify, the law" by ignoring Maechling and Alcosser's argument and affirming an easement by necessity despite caselaw to the contrary.[2] *Leichtfuss*, ¶ 37 n. 8.

¶54 Turning, then, to the question of "strict necessity," I conclude that the following undisputed facts and well-established legal principles dictate the resolution of this case.

¶55 **1.** The real properties at issue here, now owned by Ashbys, Maechling, Alcosser, and Dalton, were held in common ownership by Ravalli County in 1934. All of these properties, in turn, were part of a larger tract the County acquired by tax deed in 1932. The larger tract is referred to in the record as the "Tax Parcel."

---

[2] The Court states that this issue should not be considered because it was not raised in the District Court and was noted only "in passing" on appeal. Opinion, ¶ 25. The fact is, however, that the validity of the easement alleged by the Ashbys depends on whether "strict necessity" existed at the time the alleged dominant and servient properties were severed from common ownership. Consequently, whether Ravalli County could reserve an easement by necessity is an antecedent issue which we must address in order to determine the easement's validity. In my view, the *Leichtfuss* exception clearly applies on the facts at issue here.

¶56    **2.** In July 1934, the County conveyed the properties now owned by Maechling, Alcosser, and Dalton, plus several adjoining tracts, to George W. Jones. The County retained the property now owned by the Ashbys (hereinafter, the Ashby Property). The following depiction of the properties is included as an exhibit to the Ashbys' motions for summary judgment. It has been reduced to 6.5 inches wide so that it could fit on the following page, and labels have been added identifying the properties. Also, the Ashbys' original diagram misrepresents the full extent of the Tax Parcel. Based on the property description contained in the 1932 tax deed to Ravalli County, the Tax Parcel also includes the shaded area shown below.



🡔 **Ashbys' original diagram** 🡕

🡐 **This shaded area is the portion of the Tax Parcel that was omitted from the Ashbys' original diagram. It will hereinafter be referred to as the "Shaded Parcel."**

The Tax Parcel is represented by the heaviest bold line, and the relevant properties within

the Tax Parcel are represented by the lighter bold lines and the dashed lines. The Ashby

Property consists of the three adjoining tracts that are each numbered 7. The property sold to Jones consists of the seven adjoining tracts that are numbered 9, 10, 5, 16, 11, 14, and 15 (collectively, the Jones Tracts). Of these, Maechling and Alcosser now own the tracts numbered 9 and 10 (hereinafter, the Maechling Property), and Dalton now owns the tract numbered 16. West County Line Road (WCL Road) runs along the boundary between Missoula County (to the north) and Ravalli County (to the south). WCL Road approaches from the east, and the record reflects that the road terminates at the northwest corner of Dalton's property. The easement claimed by the Ashbys, therefore, would connect the Ashby Property to WCL Road over the Maechling Property.

¶57 **3.** When it transferred the Jones Tracts to Jones in 1934, Ravalli County failed to expressly reserve an easement over that land for the benefit of the Ashby Property. Specifically, the County failed to expressly reserve an easement connecting the Ashby Property to WCL Road via the Maechling Property. As a result, the Ashby Property supposedly became "landlocked," i.e., "[s]urrounded by land, with no way to get in or out except by crossing the land of another," *Black's Law Dictionary* 894 (Bryan A. Garner ed., 8th ed., West 2004). I say "supposedly" because the record is patently inconclusive on this point. For one thing, the Ashbys have not shown that all property (other than the Jones Tracts) adjacent to the Ashby Property at the time of severance was held or owned by someone other than Ravalli County. Indeed, the record is unclear as to whether the County, at this time, retained *other* properties within the Tax Parcel besides the Ashby Property and whether the County, at this time, held other properties adjacent to the Tax Parcel. *See State v. Cronin* 179 Mont. 481, 488, 587 P.2d 395, 400 (1978) ("We caution

court and counsel to explore these factual questions where an implied . . . easement by necessity is asserted. Examination of the titles to the surrounding parcels would provide a reliable indication of whether strict necessity existed when the land in question was conveyed. We therefore reverse the finding of implied easement by necessity, there being insufficient evidence in the record to support it."). Furthermore, the Ashbys tacitly acknowledged in the District Court that they do not know for certain whether other roads (besides WCL Road) accessed the Tax Parcel in 1934. They offered only that they had "found no evidence" of any other access. Yet, some of the early- and mid-1900s maps included as exhibits to the parties' motions for summary judgment actually depict a road coming off a public highway and ending at or very near the eastern boundary of the Shaded Parcel. In short, the Ashbys failed to meet their burden of establishing that the Ashby Property in fact became landlocked as a result of the 1934 sale. If anything, their evidence creates genuine issues of material fact. Nevertheless, for purposes of the present discussion only, I will accept as true their premise that the Ashby Property was landlocked following the sale of the Jones Tracts.

¶58 **4.** In September 1935, Ravalli County transferred the Ashby Property to L. Robert McKenzie. The Ashbys purchased this property in December 2004.[3]

---

[3] Notably, the Ashbys' purchase agreement contains a provision which cautions them: "There is a question of access to the 120 acre parcel. Buyer has been fully informed of such access issue and accepts title to the 120 acre parcel 'AS IS' . . . ." This provision further states that the seller will cooperate with the Ashbys to address the access issue by, among other things, providing evidence "regarding use of *the existing access* by Seller and members of the Seller's family" (emphasis added). This certainly calls into question the Ashbys' claim that a present necessity exists for an easement to access their property.

¶59    **5.** Ravalli County had the power to condemn an easement over the Maechling Property, in favor of the Ashby Property, before it sold the Ashby Property to McKenzie. *See* §§ 1622, 4478, 9934, RCM (1935). Ravalli County did not exercise this power.

¶60    **6.** The Ashbys claim an easement by necessity. We have described two types of easement by necessity, one granted and the other reserved:

> Where an owner of land conveys a parcel thereof which has no outlet to a highway except over the remaining lands of the grantor or over the land of strangers, a way of necessity exists over the remaining lands of the grantor. Similarly, a way of necessity is found when the owner of lands retains the inner portion conveying to another the balance, across which he must go for exit and access.

*Schmid v. McDowell*, 199 Mont. 233, 237, 649 P.2d 431, 433 (1982) (alteration, internal quotation marks, and citations omitted). The theory advanced by the Ashbys and adopted by the District Court is that when Ravalli County sold the Jones Tracts to Jones in 1934, it by implication *reserved* an easement by necessity over the lands thus conveyed for the benefit of the County's retained lands.

¶61    To establish an easement by necessity, the proponent must show, by clear and convincing evidence, (1) unity of ownership, i.e., prior common ownership of the alleged dominant and servient tenements, and (2) strict necessity for an easement at the time the dominant and servient tenements were severed from common ownership, as well as continuing necessity for an easement. *See Graham v. Mack*, 216 Mont. 165, 175-76, 699 P.2d 590, 596-97 (1984); *Woods v. Houle*, 235 Mont. 158, 163, 766 P.2d 250, 253 (1988); *Loomis v. Luraski*, 2001 MT 223, ¶¶ 49-51, 306 Mont. 478, 36 P.3d 862; *see also Gacki v. Bartels*, 859 N.E.2d 1178, 1184 (Ill. App. 2d Dist. 2006) ("It is the burden of the party claiming an easement to show the facts necessary to create an easement by

25

implication. Furthermore, the party claiming the easement must meet this burden of proof by clear and convincing evidence." (citation omitted)); *Griffeth v. Eid*, 1998 ND 38, ¶ 6, 573 N.W.2d 829 ("A party seeking an implied easement has the burden of proving the existence of the easement by clear and convincing evidence."). The common law doctrine of easement by necessity "does not exist to ensure a right of access to any and all landlocked property; rather, the doctrine is properly applied only when the circumstances establish that an access easement was intended at the time of the common owner's conveyance." *Murphy v. Burch*, 205 P.3d 289, 294 (Cal. 2009). "Courts are reluctant to find easements by implication for the reason that such an action results in depriving a person of the use of his property by imposing a servitude by mere implication." *Woods*, 235 Mont. at 162, 766 P.2d at 253.

¶62   **7.** The requirement of strict necessity fails where the retained, landlocked parcel is held by a public entity. "Where a *private* landowner conveys to another individual a portion of his lands in a certain area and retains the rest, it is presumed at common law that the grantor has reserved an easement to pass over the granted property if such passage is necessary to reach the retained property. These rights-of-way are referred to as 'easements by necessity.' " *Leo Sheep Co. v. United States*, 440 U.S. 668, 679, 99 S. Ct. 1403, 1409 (1979) (emphasis added). But where *the government* conveys a portion of its lands, "the easement is not actually a matter of necessity . . . because the Government has the power of eminent domain." *Id*. at 679-80, 99 S. Ct. at 1410.

> Jurisdictions have generally seen eminent domain and easements by necessity as alternative ways to effect the same result. For example, the State of Wyoming no longer recognizes the common-law easement by necessity in cases involving landlocked estates. It provides instead for a

26

procedure whereby the landlocked owner can have an access route condemned on his behalf upon payment of the necessary compensation to the owner of the servient estate. For similar reasons other state courts have held that the "easement by necessity" doctrine is not available to the sovereign.

*Id.* at 680, 99 S. Ct. at 1410 (footnote omitted); *see also Murphy*, 205 P.3d at 294 ("In contrast to private party conveyances, however, conveyances involving a sovereign as the common owner typically do not give rise to implied *reservations* of easements or other property interests in conveyed land," in part because "strict necessity does not exist in the case of the sovereign as in the case of the private landowner, because the sovereign can exercise the power of eminent domain to obtain any and all reasonable rights-of-way.").

¶63    This is the law in Montana. *See Simonson v. McDonald*, 131 Mont. 494, 311 P.2d 982 (1957). Notably, *Simonson* presents a factual scenario analogous to the case at hand. The Simonsons purchased from the Northern Pacific Railway in 1951 a parcel of land surrounded on three sides by mountains and on the fourth by land the McDonalds had previously purchased from the Northern Pacific Railway in the 1930s. All of this land was chiefly valuable for timber and grazing purposes. The Simonsons contended that their only means of ingress to and egress from their land was across the McDonalds' land, and they claimed an easement by necessity based on the theory (like the Ashbys' theory here) that when the Northern Pacific Railway conveyed the land to the McDonalds in the 1930s, it by implication reserved an easement by necessity over the conveyed land. *See id.* at 495-96, 311 P.2d at 982-83. This Court, however, agreed with the view that " 'the law will not imply [a way of necessity] where it has provided another method for obtaining the same at a reasonable expense to the landowner.' " *Id.* at 499, 311 P.2d at

27

985 (quoting *Backhausen v. Mayer*, 234 N.W. 904, 905 (Wis. 1931)). The Court noted that the existence of the power of eminent domain " 'would seem to negative the strict necessity on which the implication of the reservation of the right of way * * * must be grounded.' " *Id.* at 499, 311 P.2d at 985 (asterisks in *Simonson*) (quoting *State v. Black Bros.*, 297 S.W. 213, 219 (Tex. 1927)). Thus, the Court held that there is no necessity for an easement where the right of condemnation provides the owner of the landlocked parcel with an "adequate remedy." *See id.* at 500-01, 311 P.2d at 985-86.

¶64 Unfortunately, some of the language used by the Court in *Simonson* was unnecessarily broad in light of the facts of the case and the earlier reasoning in the opinion. Specifically, Justice Angstman wrote: "We conclude therefore that in this state there can be no implied reservations or implied grants of easement by necessity. They may be obtained in eminent domain proceedings if proper showing be made of the necessity therefor." *Id.* at 501, 311 P.2d at 985-86. There was no basis for abolishing the easement-by-necessity doctrine outright; and for this reason, the Court subsequently limited *Simonson*'s holding. In *Thisted v. Country Club Tower Corp.*, 146 Mont. 87, 405 P.2d 432 (1965), the Court found that an "implied equitable servitude" restricting the use of apartments to residential purposes was included in the transfers of the apartments in question. *Id.* at 103, 405 P.2d at 440. In addition, although it arguably was not essential to this holding (since *Simonson* dealt with easements, not equitable servitudes), the Court nevertheless took the opportunity to overrule *Simonson* insofar as *Simonson* completely abolished easements by necessity and insofar as *Simonson* precluded the sort of privately held "implied equitable servitudes" recognized in *Thisted*. *See id.* at 103, 405 P.2d at

28

440. But *Thisted* did not disturb the principle that "strict necessity" fails where the retained, landlocked parcel is held by a public entity with the power to condemn a right-of-way.

¶65 **Analysis.** Clearly, then, in light of the foregoing undisputed facts and law, there is no way that an easement by necessity over the Maechling Property in favor of the Ashby Property can exist. Such an easement would have arisen, if at all, when these properties were severed from common ownership in July 1934. Yet, the common owner (Ravalli County) had the power to condemn an easement for the benefit of its retained and (supposedly) landlocked parcel. Hence, no "strict necessity" existed and no easement by necessity came into existence. Again, it is important to emphasize that an implied easement by necessity is created, if at all, *at the time of severance. Schmid*, 199 Mont. at 237-38, 649 P.2d at 433; *Big Sky Hidden Village Owners Assn. v. Hidden Village*, 276 Mont. 268, 277, 915 P.2d 845, 850 (1996). Contrary to the Ashbys' contentions, such an easement does *not* suddenly spring into existence 70 years after the severance because the passage of time, changed circumstances, and other parties make that a more palatable result.

¶66 The Court's attempts to impugn this analysis are wholly unavailing. First, the Court contends that *Leo Sheep* is inapposite because "the Ashbys are not a governmental entity with the power of eminent domain." Opinion, ¶ 25. But this contention plainly misses the point made by the Supreme Court in its discussion of easements by necessity—namely, that where a governmental entity conveys a portion of its lands, an easement by necessity does not arise in favor of a retained landlocked parcel because the

government has the power to condemn a right-of-way. *See* ¶ 62, *supra*; *Leo Sheep*, 440 U.S. at 679-80, 99 S. Ct. at 1410. Here, as the Court itself states in ¶ 22, strict necessity must exist "at the time the tracts are severed from the original ownership . . . ." Obviously, strict necessity did not exist at the time the Ashby Property and the Maechling Property were severed from the original ownership for the simple reason that Ravalli County had the power of eminent domain. Whether the *present* owner of the Ashby Property has the power of eminent domain is entirely beside the point, given that the requisite strict necessity did not exist *at the time the tracts were severed from the original ownership*—which, again, the Court states in ¶ 22 is a requirement to establish an easement by necessity.

¶67 Second, the Court notes that *Simonson* was overruled in part by *Thisted*. Opinion, ¶ 25 n. 5. As explained above, however, the critical point of *Simonson* and *Thisted* (as they are relevant to the present case) is that *Thisted* did not disturb *Simonson*'s holding that "strict necessity" fails where the retained landlocked parcel is held by a public entity with the power to condemn a right-of-way.

¶68 Based on the foregoing analysis, the Ashbys' easement-by-necessity claim fails as a matter of law on the undisputed facts they have marshaled in support of it. Strict necessity did not exist at the time of severance, and Maechling and Alcosser were entitled to summary judgment on this basis alone.[4]

---

[4] It is highly doubtful that strict necessity exists at the present time either. *See* Opinion, ¶ 22 ("Strict necessity must exist at the time the [unified] tracts are severed from the original ownership *and* at the time the easement is exercised." (citing *Watson v. Dundas*, 2006 MT 104, ¶ 32, 332 Mont. 164, 136 P.3d 973)). At best, the evidence in the record indicates that genuine issues of material fact exist on this issue. The problem for

¶69 For reasons not explained in the record, Ravalli County failed to condemn an easement before it sold the Ashby Property to McKenzie in 1935. That does not necessarily leave the Ashbys without options, however. For one thing, they could try to purchase for just compensation the easement which, in this litigation, they have demanded for nothing.[5] The Ashbys could also try to acquire an easement through a private condemnation action. *See Godfrey v. Pilon*, 165 Mont. 439, 448, 529 P.2d 1372, 1377 (1974); §§ 70-30-102, -107, MCA. But they are not entitled to summary judgment on their claim of an easement by necessity.

¶70 Indeed, even setting aside the fact that this claim is invalid as a matter of law under the analysis above, the record before us is woefully underdeveloped due to the shoddy pleading, research, briefing, and argument referred to in ¶ 50, *supra*. For one thing, this Court held in *Leisz v. Avista Corp.*, 2007 MT 347, ¶ 48, 340 Mont. 294, 174 P.3d 481, that "strict necessity" does not exist at the time of severance if "no one was living on the [landlocked property]."[6] Yet, the Ashbys have provided no evidence that

---

Maechling, Alcosser, and Dalton, however, is that because of a discovery sanction (resulting from their first attorney's admitted failure to properly manage the case), they have been saddled with an admission that "[n]o practical access to a public road currently exists from the Ashby Property." In other words, contrary to the Court's suggestion that the District Court "reviewed the evidence" on this issue, Opinion, ¶ 23, the fact is that the existence of a present "strict necessity" is based solely on a discovery sanction.

[5] Prior to commencing the instant lawsuit, the Ashbys' counsel mailed Maechling and Alcosser a letter indicating that the Ashbys intended to log the Ashby Property and offering to purchase an express easement over the Maechling Property for $10.00—hardly "just compensation."

[6] I cannot agree with the Court that this statement in *Leisz* was "dicta." Opinion, ¶ 22 n. 4. It was part of our holding; and until the Court expressly overrules it, it is extant law applicable to the question of whether the Ashbys have shown a strict necessity. For that matter, *Leisz* is consistent with our observation in *Godfrey* that the term "strict necessity" means "essential to use and enjoyment of the premises *as permanently*

31

someone was living on or using the Ashby Property in 1934. But more significantly, the record fails to answer important questions about alternative routes to the Tax Parcel in 1934, as well as the status and ownership of the remaining tracts in the Tax Parcel and the properties adjacent to the Tax Parcel following the sale to Jones. The Ashbys, therefore, have wholly failed to demonstrate, by clear and convincing evidence, as a purely factual matter, that strict necessity existed at the time of severance. Consequently, even under the Court's approach, which ignores the eminent domain issue, the District Court's decision granting summary judgment in favor of the Ashbys should be reversed and this case should be remanded for further development of the record and, if necessary, a trial on the merits.

¶71    That being said, however, I would follow the procedural exception recognized in *Leichtfuss*. We should resolve this case on the basis of the antecedent and ultimately dispositive issue raised (albeit, belatedly) by Maechling, Alcosser, and Dalton. In so doing, we would preserve the well-established legal principles underlying the doctrine of easement by necessity; we would uphold Meachling's and Alcosser's rights to the ownership and enjoyment of their real property free of an implied easement that has no basis in law or fact; and we would avoid publishing, in an important easement case, a decision that is contrary to decades of easement law, that will introduce inconsistency into our easement-by-necessity jurisprudence, and that is grounded in an underdeveloped record characterized by bad lawyering.

---

*improved at the time of the conveyance of the servient estate.*"  165 Mont. at 445, 529 P.2d at 1375 (emphasis added, internal quotation marks omitted).

¶72    I would reverse and remand for entry of summary judgment in favor of Maechling, Alcosser, and Dalton on the Ashbys' claim of an easement by necessity.  I dissent from the Court's failure to do so.


                                        /S/ JAMES C. NELSON